**FILED**

Jeanne A. Naughton, CLERK

**February 24, 2017**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ Nelson Dos Santos

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In Re:

Roper and Twardowsky, LLC,

                              Debtor.

Chapter 7

Case No.:    15-32878 (SLM)

Judge:    Hon. Stacey L. Meisel

## OPINION

**A P P E A R A N C E S :**

Michael J. Connolly, Esq.
LeClairRyan P.C.
One Riverfront Plaza
1037 Raymond Boulevard
Sixteenth Floor
Newark, New Jersey 07102
*Counsel for Trustee, Charles M. Forman*

Jay Rice, Esq.
Nagel Rice, P.C.
103 Eisenhower Parkway
Roseland, New Jersey 07068
*Counsel for Bendit Weinstock P.A.*

Jerrold S. Kulback, Esq.
Archer & Greiner P.C.
One Liberty Place
Thirty-Second Floor
1650 Market Street
Philadelphia, Pennsylvania 19103
***Counsel for Bochetto & Lentz, P.C.***

William J. Skepnek, Esq.
1 Westwood Road
Lawrence, Kansas 66044
***Pro Se***

Steven M. Smoot
440 Louisiana, Suite 1850
Houston, Texas 77002
***Pro Se***

**THE HONORABLE STACEY L. MEISEL, UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the Chapter 7 Trustee, Charles M. Forman's (the "**Trustee**")

*Application for Retention of Roper & Thyne, LLC as Special Counsel for the Trustee* ("**Retention**

**Application**").[1]  (Docket No. 393).  Roper & Thyne LLC ("**Roper & Thyne**") filed a *Letter Brief*

in support of the Retention Application.[2]  (Docket No. 401).  Opposing the retention application[3]

is Bochetto & Lentz, P.C. ("**Bochetto**"), Bendit Weinstock, P.A. ("**Bendit**"), and William Skepnek

("**Mr. Skepnek**") together with Steven Smoot ("**Mr. Smoot**") (collectively, "**Skepnek and**

**Smoot**").  (Docket No. 397).  Hereafter, the objecting parties will be referred to as "**Objecting**

**Creditors**."

## JURISDICTION AND VENUE

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and

157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended

October 17, 2013, referring all bankruptcy cases to the bankruptcy court.  This matter concerns the

administration of the bankruptcy estate.  This matter is a core proceeding within the meaning of

28 U.S.C. § 157(b)(2)(A).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

Pursuant to Federal Rule of Bankruptcy Procedure 7052, the Court issues the following findings

of fact and conclusions of law.

---

[1] On February 14, 2017, the Trustee filed a *Reply Memorandum in Further Support of Application for Retention of Roper & Thyne, LLC as Special Counsel for the Trustee*.  (Docket No. 401).

[2] Vincent D. Commisa, Esq. ("**Mr. Commisa**"), who is co-counsel of record for Roper and Twardowsky, LLC ("**Debtor**"), electronically filed a *Letter Brief* on behalf of Roper & Thyne.  This raises a number of conflict of interest concerns with the Court.  Mr. Commisa appears to be simultaneously representing the Debtor and a creditor of the estate.  Notwithstanding, the Court read the *Letter Brief* and, in the spirit of equity, will consider it.

[3] On February 15, 2017, the United States Trustee's Office ("**UST**") filed an *Objection of the Acting Unites States Trustee to Application of Retention of Roper & Thyne, LLC as Special Counsel for the Trustee*.  (Docket No. 403).  The Court will not consider the UST's objection because it is untimely and the UST did not seek leave of the Court to file out-of-time.  On February 1, 2017, after an extensive in-chambers conference, the parties amicably reached an agreement as to a briefing schedule on this issue and various others.  On the same day, this agreement was memorialized on the record and a letter detailing the agreement was docketed.  (Docket No. 392).  The deadline to file an objection to the Retention Application was February 10, 2017 and the Court will respect it.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

This Court and all of the parties involved are thoroughly acquainted with and aware of the

extensive factual, procedural and legal history of this bankruptcy case and its associated adversary

proceedings.  Ergo, the Court will limit its recitation of the facts to those facts that are most

pertinent to the instant Retention Application.  For a more thorough recitation of the facts of the

case, the Court directs the parties to review previous written decisions, *In re Roper and

Twardowsky, LLC*, 559 B.R. 375 (Bankr. D.N.J. 2016) and *In re Roper and Twardowsky*, *LLC*,

No. 16-5485, 2016 WL 7322787 (D.N.J. Dec. 14, 2016), which facts are incorporated as if set

forth fully herein.

### I.    *Bankruptcy Case Background*

On December 4, 2015, Debtor filed a voluntary petition for relief under Chapter 11 of the

Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (Case No.

15-32878).  (Docket No. 1).  Angela Roper ("**Ms. Roper**") and Kenneth Thyne ("**Mr. Thyne**")

are equity holders and principals of the Debtor.

At its core, the Debtor's case involves disputes over respective rights to settlement

proceeds between the Debtor and a number of law firms and lawyers that served as the Debtor's

co-counsel in a litigation against Prudential Life Insurance Company (the "**Prudential

Litigation**"), which was venued in the Superior Court of New Jersey ("**State Court**").  During the

Prudential Litigation, the Debtor entered into various agreements with other law firms and

attorneys, including but not limited to Bendit, Bochetto, Gorman & Gorman LLC ("**Gorman**"),

Skepnek and Smoot and Goldman Davis & Gutfleish, P.C. ("**Goldman**").

The settlement funds from the Prudential Litigation settlement were placed in the Roper

and Twardowsky Qualified Settlement Fund ("**QSF**").  Ms. Roper, whose involvement in this

bankruptcy case will fully be detailed below, was assigned to serve as the QSF Trustee. Shortly after the QSF was established, all remaining plaintiffs in the Prudential Litigation – the QSF beneficiaries – received their settlement payments. The remaining funds in the QSF were for attorney's fees and administrative expenses, if any. However, the Debtor disputed many of its former co-counsels' fees in the State Court and the remaining disputes carried over into this bankruptcy case.

In January 2016, the Debtor deposited $7,790,526.04 from the QSF (the "**Funds**") with the Registry Fund of this Court. Certain approved fees, expenses and settlements have already been paid from the Funds pursuant to various Orders entered by this Court. Specifically, on November 7, 2016, this Court approved settlements between the Trustee and creditors Gorman and Goldman. (Docket Nos. 323 and 324). Consequently, Gorman and Goldman are no longer active in this bankruptcy case.

On February 23, 2016, following oral argument, the Court issued an oral decision and entered an *Order Converting the Case to Chapter 7*. (Docket No. 51). In reaching its decision, the Court found, *inter alia*, that multiple potential conflict of interest issues existed between the Debtor and its principals. The Court was troubled by the Debtor's failure to disclose on its petition that the Debtor granted UCC-1 security interests to Ms. Roper, her relative Craig Roper ("**Mr. Roper**"), and Mr. Thyne just two months prior to the bankruptcy filing. Moreover, the Court indicated the fact that the Debtor was a defendant along with Roper & Thyne and its principals (Ms. Roper and Mr. Thyne) in a separate legal action created numerous potential conflict of interest concerns. Because of the aforementioned findings, the Court ruled that "cause" existed to either convert or dismiss the case under Section 1112(b) of the Bankruptcy Code. To this end, the Court looked at the potential causes of action the Debtor may have against its principals and decided it

5

would be in the best interest of the creditors to bring in a Chapter 7 Trustee who would be in the best position to evaluate and pursue these assets to the extent they were of any value to the estate.

II.   **_Active Adversary Proceedings, Litigations, and Pending Motions within the Main Bankruptcy Case_**

    A.   **Adversary Proceedings**

There are currently five active[4] adversary proceedings:

1. **Adversary Proceeding No. 16-01150**: on February 25, 2016, Bendit filed a _Notice of Removal of Civil Claim to Bankruptcy Court_ and removed _Bendit Weinstock, P.A., Petitioner, v. Roper and Twardowsky, LLC; Angela Roper, Trustee; and Roper and Twardowsky Qualified Settlement Fund_, Superior Court of New Jersey, Law Division – Bergen County, Case No. 288, Master Docket No.: BER-L-2251-10 ("**Bendit AP 1**").  (Adv. Pro. No. 16-01150, Docket No. 1);

2. **Adversary Proceeding No. 16-01151**: on February 26, 2016, Bendit filed a _Notice of Removal of Civil Claim to Bankruptcy Court_ and removed _Roper and Twardowsky, LLC and Angela M. Roper v. William Gold, Esq., and Bendit Weinstock, P.A._, Superior Court of New Jersey, Law Division – Passaic County, Master Docker No.: PAS-L-2556-14 ("**Bendit AP 2**").  (Adv. Pro. No. 16-01151, Docket No. 1);

3. **Adversary Proceeding No. 16-01158**: on March 1, 2016, Bochetto filed a _Notice of Removal of Civil Claim to Bankruptcy Court_ and removed _Bochetto & Lentz, P.C., Petitioner, v. Roper and Twardowsky, LLC; Angela Roper, Trustee; and_

---

[4] As previously indicated, on November 7, 2016, the Court entered an Order approving a settlement between the Trustee and Gorman.  As part of the settlement, Adversary Proceeding No. 16-1143 was dismissed with prejudice. (Docket No. 323).

*Roper and Twardowsky Qualified Settlement Fund*, Superior Court of New Jersey, Law Division – Bergen County, Case No. 288, Master Docket No.: BER-L-2251-10 ("**Bochetto AP**").  (Adv. Pro. No. 16-01158, Docket No. 1);

4. **Adversary Proceeding No. 16-01182**: on March 3, 2016, Skepnek and Smoot filed a *Notice of Removal of Intervention to Bankruptcy Court* and removed *William J. Skepnek and Steven M. Smoot v. Roper and Twardowsky, LLC*, Superior Court of New Jersey, Law Division – Bergen County, Case No. 288, Master Docket No.: BER-L-2251-10 ("**Skepnek AP**").  (Adv. Pro. No. 16-01182, Docket No. 1); and

5. **Adversary Proceeding No. 16-01895**: on December 22, 2016, the Trustee filed and served an *Adversary Complaint to Determine Extent, Validity and Priority of Claims against QSF Funds on Deposit with this Court Relating to Professional Fees and Expenses Incurred on Behalf of the Roper and Twardowsky Qualified Settlement Fund* ("**Trustee AP**").  (Adv. Pro. No. 16-01895, Docket No. 1).  The Trustee brings this adversary action against the Debtor, Ms. Roper in her capacity as QSF Trustee, Robyne D. LaGrotta, Brach Eichler LLC and John Does Nos. 1 to 10.

The following motions were pending in Bendit AP 1 on the date of oral argument:[5]

1. *Cross-Motion by Angela Roper for the Entry of an Order Authorizing Angela Roper to Intervene in the Above Captioned Adversary Proceeding.*  (Adv. Pro. No. 16-1151, Docket No. 46); and

2. *Debtor, Roper and Twardowsky, LLC and Creditors, Angela M. Roper and Kenneth S. Thyne, Motion to Abstain and/or Remand.*  (Adv. Pro. No. 16-1151, Docket No. 24).

---

[5] Prior to the hearing, movants for the motion to abstain and/or remand withdrew that motion.  Parties proceeded with the cross-motion to intervene, which this Court denied in a separate ruling from the bench.

The following motions are pending in the Bendit AP 2:

1. *Debtor, Roper and Twardowsky, LLC and Creditors, Angela M. Roper and Kenneth S. Thyne, Motion to Abstain and/or Remand.*  (Adv. Pro. No. 16-1151, Docket No. 7);

2. Bendit's *Cross Motion to Disqualify Kenneth Thyne as Counsel for the Debtor and Ms. Roper.*  (Adv. Pro. No. 16-1151, Docket No. 13); and

3. Bendit's and William Gold, Esq.'s ("**Mr. Gold**") *Motion for Summary Judgment to Dismiss Amended Complaint.*  (Adv. Pro. No. 16-1151, Docket No. 18).

The following motions were pending in the Bochetto AP on the date of oral argument:[6]

1. *Cross-Motion by Angela Roper for the Entry of an Order Authorizing Angela Roper to Intervene in the Above Captioned Adversary Proceeding.*  (Adv. Pro. No. 16-1158, Docket No. 51);

2. *Debtor, Roper and Twardowsky, LLC and Creditors, Angela M. Roper and Kenneth S. Thyne, Motion to Abstain and/or Remand.*  (Adv. Pro. No. 16-1158, Docket No. 37);

3. *Bochetto & Lentz's Motion Summary Judgment on Petition to Enforce Attorney Fee Lien.*  (Adv. Pro. No. 16-1158, Docket No. 37); and

4. *Motion of Roper and Twardowsky, LLC for Partial Summary Judgment.*  (Adv. Pro. No. 16-1158, Docket No. 69).

**B.      Kansas Litigation**

On October 16, 2015, after a trial in the United States District Court for the District of Kansas (the "**Kansas Action**"), Skepnek and Smoot obtained a $2,250,000 judgment specifically against the Debtor.  The Debtor then filed a motion for a new trial in the Kansas Action.  However, the Debtor filed for bankruptcy before the Kansas District Court released a decision.

---

[6] Prior to the hearing, movants for the motion to abstain and/or remand withdrew that motion.  Parties proceeded with the cross-motion to intervene, which this Court denied in a separate ruling from the bench.

On November 18, 2016, the Court entered an Order granting limited relief from the automatic stay to allow the continued prosecution of the Debtor's post-trial motions in the Kansas Action. (Docket No. 331). Thereafter, the Trustee retained special counsel in the Kansas Action. (Docket No. 356). According to the Trustee, the briefing on the Debtor's post-trial motions in the Kansas Action for judgment as a matter of law, new trial, or remittitur is now complete and the parties are awaiting a decision from the Kansas District Court. (Docket No. 393 at 11).

### C.    Pending Motions Pertaining to Bendit's Proof of Claim

#### 1.    Trustee's Objection to Bendit's Proof of Claim

On July 28 2016, the Trustee filed the *Trustee's Objection to Bendit and Weinstock P.A. Proof of Claim (Claim 5-1)* ("**Trustee's Objection to Bendit's Claim**"). (Docket No 208). Although the Court has scheduled this for a hearing, at various parties' request, the scheduled hearings have either been adjourned or converted into status conferences.

On January 13, 2017, Bendit filed a letter with the Court requesting that the Court schedule a status conference to resolve issues pertaining to discovery. (Docket No. 363). On January 17, 2017, the Court held a status conference wherein the parties expressed, on the record, that the prosecution of the Trustee's Objection to Bendit's Claim has been delayed by disputes over discovery. Specifically, Ms. Roper and Mr. Thyne failed to comply with both the Trustee's and Bendit's request for documents and continuously failed to set a schedule for depositions. At the status conference, Ms. Roper informed the Court that the delay in discovery production was due to: (1) Mr. Thyne's poor health condition; (2) Ms. Roper's busy trial schedule; (3) Ms. Roper's and Mr. Thyne's need to represent Roper & Thyne's clients and give their attention to those matters; and (4) the Trustee's failure to sign confidentiality documents, which Ms. Roper asserted were necessary before she disclosed certain information. Moreover, Ms. Roper continuously and

without prompting expressed her frustration with Bendit and alleged, without providing any concrete details, that Bendit was defrauding the Court and she would be filing formal pleadings to prove it. The Court indicated that it would review appropriate pleadings supporting the unsubstantiated allegations. The Court never received any pleadings on this issue.[7]

At the parties' request, the Court entered a Scheduling Order on January 18, 2017 establishing certain deadlines and guidelines for the production of discovery and depositions. (Docket No. 371). Specifically, all fact discovery, including but not limited to any and all properly noticed depositions, were ordered to be completed by February 20, 2017. *Id.* Moreover, the Court set a final schedule for the parties to file dispositive motions to resolve the Trustee's Objection to Bendit's Claim.

On February 1, 2017, the Court held a scheduling conference, in chambers, with counsel for Bendit, counsel for Bochetto, the Trustee and his counsel, counsel for the Debtor and counsel for both Mr. Thyne individually and Ms. Roper individually. In conference, the parties worked amicably together to resolve the discovery issue and agreed to amend the original Scheduling Order. They memorialized their agreement in an Order dated February 8, 2017. (Docket No. 394). In sum, through the Order, the parties agreed to complete all discovery by February 27, 2017. The dispositive motion schedule did not change. Moreover, during the chambers conference and later on the record, the parties agreed to a hearing and briefing schedule for certain pending motions.[8]

---

[7] The Court raises this issue solely because the Trustee seeks to retain Roper & Thyne and this is but one example of a position taken by Ms. Roper before the Court. At this time, neither Ms. Roper nor any other party has provided any evidence to believe that Bendit engaged in a fraud upon this Court. The Court notes that there is a contested matter regarding the validity, amount and priority of Bendit's claim.

[8] Letter memorializing the scheduling agreement can be found at Docket No. 392.

2.      Trustee's Motion to Fix Bendit's Proof of Claim

Separately, on August 15, 2016, the Trustee filed a motion seeking an Order from the Court

fixing the maximum amount Bendit can recover from the Funds.  (Docket No. 246).  On September

30, 2016, this Court entered an Order consensually submitted by the Trustee and Bendit ordering

that the maximum amount Bendit can recover out of the Funds shall not exceed the sum of

$2,011,562.85 and that the remaining portion of Bendit's Proof of Claim shall be treated as a

general unsecured claim of the Debtor's estate.  (Docket No. 292).  On October 11, 2016, Bendit

filed a motion to amend its Proof of Claim.  (Docket No 298).  At the Court's direction, the parties

have submitted multiple rounds of briefs on this issue.  The Court has yet to rule on the motion to

amend.

### III.    *Ms. Roper's and Mr. Thyne's Interests, Positions and Various Roles*

1.  There is no dispute that Ms. Roper and Mr. Thyne are equity owners of the Debtor;

2.  There is no dispute that Ms. Roper and Mr. Thyne are equity owners of Roper & Thyne;

3.  Ms. Roper and Mr. Thyne are set to serve as fact witnesses if the discussed adversary

    proceedings advance to trials;

4.  Ms. Roper and Mr. Thyne may serve as fact witnesses if the Debtor obtains a new trial in

    the Kansas Action;

5.  There is no dispute that Ms. Roper is the QSF Trustee.  The Trustee advised the Court (at

    one of the previous hearings) that Ms. Roper, as QSF Trustee, asserted a claim for

    approximately $800,000 against the QSF for her services as QSF Trustee;

6.  There is no dispute that the Debtor lists Ms. Roper, Mr. Roper and Mr. Thyne as secured

    creditors as follows:

    o  (A) a $2,500,000 secured claim by Ms. Roper for deferred compensation;

o   (B) a $380,000 secured claim by Mr. Roper for a "Loan";

o   (C) a $1,250,000 secured claim by Mr. Thyne for deferred compensation;

7.   There is no dispute that Ms. Roper asserts a $25,000,000 UCC wage claim against the Debtor's estate (Proof of Claim No. 9);

8.   There is no dispute that Mr. Thyne asserts a $1,250,000 claim against the Funds (Proof of Claim No. 11);

9.   There is no dispute that Roper & Thyne asserts a $1,000,000 claim against the Funds (Proof of Claim No. 10);

10.  There is no dispute that Roper & Thyne filed a notice of appearance, as co-counsel to the Debtor, in the main bankruptcy case (Docket Nos. 104 and 209);

11.  There is no dispute that Roper & Thyne is co-counsel for Ms. Roper individually and Mr. Thyne individually (Docket No. 357);

12.  There is no dispute that Roper & Thyne represents the QSF and Ms. Roper, as QSF Trustee, in an appeal of certain orders to the Third Circuit Court of Appeals;

13.  There is no dispute that the Trustee in various appearances before this Court asserted that the estate may have claims against Ms. Roper, Mr. Thyne and/or their firm Roper & Thyne;

14.  There is no dispute that Ms. Roper and Mr. Thyne are both defendants in a fraudulent transfer action brought by Skepnek and Smoot;

15.  There is no dispute that Ms. Roper, in her individual capacity, is one of the listed plaintiffs in Bendit AP 2 and also asserts personal claims against Bendit and its principal, Mr. Gold (Adv. Pro. 16-01151 Docket No. 1);

16.  There is no dispute that Ms. Roper, in her capacity as QSF Trustee, was listed as one of

the defendants in Bochetto AP and Bendit AP 1;[9] and

17.  There is no dispute that Ms. Roper and Mr. Thyne filed formal motions seeking to

intervene in Bendit AP 1, Bochetto AP and Skepnek AP. *See*, *e.g.*, (Adv. Pro. No. 16-1143

Docket No. 66) (Ms. Roper and Mr. Thyne filed identical motions in each adversary

proceeding).

### IV.    *Trustee's Application for Retention of Roper & Thyne, LLC as Special Counsel*

Even with all of these connections, the Trustee seeks authorization to employ Roper &

Thyne as special counsel to the Trustee pursuant to Bankruptcy Code Section 327(e) and Federal

Rule of Bankruptcy Procedure 2014.  The Trustee seeks to employ Roper & Thyne to "perform

litigation services necessary during the claims objections, including appearing on behalf of the

Trustee at hearings, discovery and oral argument."  (Docket No. 393 at 15).  Specifically, the

Trustee seeks to employ Roper & Thyne in connection with the resolution of the claims of three

creditors in the Debtor's bankruptcy case: (1) the claim held by Bochetto; (2) the claim held by

Bendit; and (3) the claim held by Skepnek and Smoot.  *Id*. at 2.  Moreover, the Trustee seeks the

retention Roper & Thyne as special counsel to represent the estate regarding any affirmative claims

the estate may have against Bendit.  *Id*.  The aforementioned claims will be collectively referred

to as "**Law Firm Claims**."  According to the Retention Application, the Trustee or his counsel,

Michael J. Connolly, Esq., will continue to "monitor and attend the pertinent hearings, depositions

and other proceedings related to the claims objections."  *Id*. at 15.  Moreover, the Trustee will

"retain full authority regarding the course of the claims objection, including but not limited to,

strategic decisions, and decisions regarding settlement."  *Id*.  Simply, the Trustee seeks to retain

---

[9] On May 9, 2016, the parties voluntarily dismissed Ms. Roper, in her capacity as QSF Trustee, from the adversary
proceedings over Ms. Roper's objection.

Roper & Thyne to prosecute the Trustee's Objection to Bendit's Claim, Bendit AP 1, Bendit AP

2, Bochetto AP and the Kansas Litigation.

The Trustee submits to the Court that, to the best of his knowledge, Roper & Thyne only

share the following 10 connections with the Debtor, creditors of the estate and any other party in

interest:

A. The principals of Special Counsel are Kenneth Thyne, Esq. and Angela Roper, Esq.

B. Mr. Thyne and Ms. Roper were principals of the Debtor.

C. Mr. Thyne and Ms. Roper each have filed Proofs of Claim (Claim Nos. 9, 10, and 11). Ms. Roper has asserted a claim for "wages"/"services performed" in the amount of $25 million (Claim No. 9), for "legal work performed" in the amount of $1 million (Claim No. 10), and Mr. Thyne has asserted a claim of $1,250,000 for "wages"/"services performed".

C. Ms. Roper's spouse has filed a Proof of Claim (Claim No. 8) for outstanding rent and for loans allegedly made to the Debtor.

D. Ms. Roper acts as the Trustee for the Roper & Twardowsky Qualified Settlement Fund (the "QSF"). The remaining funds in the QSF are on deposit with this Court and are subject to the competing claims of various creditors. Ms. Roper contends that she is also entitled to compensation from the QSF Funds for services rendered as QSF Trustee. The Trustee has filed an adversary proceeding to determine the extent and validity of her claim as QSF Trustee (and the claims of other QSF professionals).

E. Ms. Roper and/or Mr. Thyne may be called to offer factual testimony with regard to the matters in issue. Upon information and belief, Ms. Roper is more likely to act as a witness.

F. Upon information and belief, Special Counsel became the replacement counsel for the Debtor in connection with various matters once the Debtor ceased ongoing operations. The Trustee has requested documents and information to ascertain the extent of transfers between the Debtor and Special Counsel.

G. Special Counsel, Ms. Roper and Mr. Thyne were named as a Defendant in a fraudulent transfer lawsuit brought by creditors William Skepnek and Steven Smoot in the United States District Court for the District of Kansas. The Trustee possesses the right to

assert similar causes of action, which he may assert if needed in
order to satisfy claims.

H. Special Counsel have signed pleadings in this matter as counsel
for Mr. Thyne and Ms. Roper in their individual capacities.

I. Angela Roper has asserted personal claims against at least one
creditor in this case (Bendit & Weinstock) and its principal.

*Id*. at 3 (errors in original).

The Trustee suggests to the Court that the retention of Roper & Thyne as special counsel

would lower administrative costs dramatically and provide "an invaluable service to the estate."

*Id*. at 14 -15.  First, Roper & Thyne have vouched to provide all related legal services at no cost to

the Trustee, and in turn, at no cost to the bankruptcy estate.  In order to litigate the Law Firm

Claims, the Trustee asserts that he will have to potentially prepare, learn and review thousands of

pages of documents, emails, and exhibits.  *Id*. at 14.  The amount of work would potentially

increase the estate's administrative fees.  In contrast, if Roper & Thyne are retained as special

counsel, the estate would never encounter those administrative fees.  *Id*.  Second, Ms. Roper and

Mr. Thyne, having lived through the Prudential Litigation, are best equipped to litigate the Law

Firm Claims on behalf of the estate.  *Id*.  According to the Trustee "[Ms. Roper's and Mr. Thyne's]

direct involvement in deposing witnesses would provide a significant benefit to the estate given

the large amount of procedural and factual background to be digested and recalled."  *Id*.  Similarly,

the Trustee asserts Ms. Roper and Mr. Thyne already "performed the legal research regarding the

claims and drafted the documents that give rise to the claims objections."  *Id*.

In respect to potential conflicts of interest, the Trustee contends that "Roper & Thyne's

interest in the claim objections are the same interests as the bankruptcy estate."  *Id*. at 17.  In

essence, the Trustee believes that the status of Ms. Roper and Mr. Thyne as equity holders of the

Debtor and creditors of the estate encourages them to effectively pursue objections to the Law

Firm Claims.  If Roper & Thyne are able to reduce or expunge any of the claims held by Bochetto,

Bendit and/or Skepnek and Smoot, the likelihood of payment to Ms. Roper and Mr. Thyne increases. *Id.* For these reasons, the Trustee asserts that Roper & Thyne "do not hold or represent any interest that is adverse to the Trustee or the estate in connection with the claims objection" and Roper & Thyne meet the "standard to represent the Trustee as her[sic] special appellate[sic] litigation counsel under 327(e)." *Id.*

### A.      Roper & Thyne's Supporting *Letter Brief*

Roper & Thyne's supporting *Letter Brief* reiterates many of the points raised by the Trustee. Specifically, (1) Ms. Roper and Mr. Thyne are "intimately familiar" with the pertinent facts giving rise to the claims of Bochetto, Bendit, Skepnek and Smoot; (2) Ms. Roper's and Mr. Thyne's services are at no cost to the bankruptcy estate; and (3) with respect to the claims objections, "[w]hile not disinterested, Roper & Thyne does not represent or hold any interest adverse to the Trustee or the Chapter 7 [e]state." (Docket No. 399 at 1-2). Notably, Roper & Thyne adds that its involvement "will hasten the conclusion of this bankruptcy" because "the resolution of [Bendit AP 1 and the Bochetto AP] will have conclusory impact on the resolution of this bankruptcy case." *Id.* at 1.

### V.      *Joint Objection of Bochetto, Bendit, Skepnek and Smoot*

The Objecting Creditors urge the Court to reject the Retention Application. They argue that Roper & Thyne cannot be retained as special counsel pursuant to Section 327(e) of the Bankruptcy Code because: (1) Roper & Thyne are being retained beyond the scope of a "specified special purpose"; (2) Roper & Thyne did not previously represent the Debtor; (3) retention of Roper & Thyne is not in the best interest of the estate; and (4) Roper & Thyne holds an interest adverse to the estate concerning the claims objections. (Docket No. 397 at 1-12).

First, Objecting Creditors assert that the proposed duties of Roper & Thyne appear to be in the nature of general representation. *Id*. at 3. They assert discovery and other litigation services in connection with the claims objections are duties typically reserved for either the Chapter 7 Trustee or his general counsel. *Id*.

Second, the Objecting Creditors posit that Section 327(e) of the Bankruptcy Code expressly requires that, in order to serve as special counsel, the law firm must have previously represented the Debtor. *Id*. at 6. Objecting Creditors maintain that the law firm Roper & Thyne has never represented the Debtor in connection with litigating the claim objections. *Id*. They concede that Ms. Roper and Mr. Thyne acting *pro se* have represented the Debtor prior to the bankruptcy. *Id*. at 5-6.

Third, the Objecting Creditors contend that the Trustee's reasoning as to why the retention of Roper & Thyne is in the best interest of the estate is flawed. *Id*. at 6-7. The Objecting Creditors submit that the Trustee will be able to obtain both Ms. Roper's and Mr. Thyne's expertise without formally retaining them since both are required to cooperate with the Trustee anyway. *Id*. Also, the Objecting Creditors assert that the described cost savings is a "mirage," since the Trustee plans to examine and supervise everything Roper & Thyne does. *Id*. at 7-12.

Fourth, the Objecting Creditors assert Roper & Thyne holds too many interests in this bankruptcy. It would be impossible for Ms. Roper and/or Mr. Thyne to provide "impartial, neutral advice to the Trustee in connection with the claims litigation." *Id*. at 10-11. The Objecting Creditors maintain that retention of Roper & Thyne will violate New Jersey Rules of Professional Conduct ("**RPCs**") 1.7(a) and 3.7. [10] *Id*. at 7.

---

[10] Objecting Creditors attach a copy of a February 1, 2017 Supreme Court of New Jersey Disciplinary Review Board (the "**Board**") decision (the "**Disciplinary Report**"). In that decision, the Board censured Ms. Roper and reprimanded Mr. Thyne for violating RPC 1.7(a)(2) (conflict of interest with a client), RPC 1.10(a) (imputation of conflict of interest) and RPC 8.4(d) (conduct prejudicial to the administration of justice). (Docket No. 397-1 at 2-60). Moreover,

## DISCUSSION

### I.     *New Jersey Rules of Professional Conduct*

Before reviewing whether an attorney meets the pertinent retention standards established

by the Bankruptcy Code, an attorney seeking to be employed to represent the estate in a bankruptcy

case must also comply with the local rules of professional conduct.  Pursuant to District of New

Jersey Local Bankruptcy Rule 9010-1, attorneys appearing before this Court are bound by the

RPCs.  *See* D.N.J. LBR 9010-1(a).  The Third Circuit requires Bankruptcy Courts and District

Courts to incorporate "state law in this field … to avoid 'detriment to the public's confidence in

the integrity of the bar that might result from courts in the same state enforcing different ethical

norms.'"  *In re Congoleum Corp.*, 426 F.3d 675, 687 (3d Cir. 2005) (quoting *United States v.

Miller*, 624 F.2d 1198, 1200 (3d Cir. 1980)).  Accordingly, "state precedent as to professional

responsibility should be consulted when they are compatible with federal law and policy."

*Congoleum Corp.,* 426 F.3d at 687 (citing *Grievance Comm. for S. Dist. of N.Y. v. Simels*, 48 F.3d

640, 645 (2d Cir. 1995)).

### A.     RPC 1.7(a)

The Objecting Creditors argue that the retention of Roper & Thyne violates RPC 1.7(a)

and RPC 3.7.  RPC 1.7(a) states the following:

> (a) Except as provided in paragraph (b), a lawyer shall not represent
> a client if the representation involves a concurrent conflict of
> interest. A concurrent conflict of interest exists if:
> (1) the representation of one client will be directly adverse to
> another client; or
> (2) there is a significant risk that the representation of one or more
> clients will be materially limited by the lawyer's responsibilities to
> another client, a former client, or a third person or by a personal
> interest of the lawyer.

---

Ms. Roper, individually, was found to violate RPC 8.4(d) (conduct prejudicial to the administration of justice) and
RPC 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal).  *Id.*

N.J. RPC 1.7(a).  "As the New Jersey rule specifies, the lawyer's own interests should not be permitted to have an adverse effect on, or otherwise materially limit, the representation of a client. A lawyer cannot allow a related business interest to affect his representation." *Congoleum Corp.*, 426 F.3d at 689 (citing ANNOTATED MODEL RULES OF PROF'L CONDUCT 109 (2004)).  Moreover, RPC 1.7(a)(1) clearly prohibits the representation of opposing parties in the same litigation.  *See* MODEL RULES OF PROF'L CONDUCT R. 1.7 cmt. (2000); *Vill. of Ridgewood v. Shell Oil*, 289 N.J. Super 181 (App. Div. 1996) (court refused to permit a law firm to represent the interests of plaintiffs and one codefendant).  Likewise, "absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated."  *See* MODEL RULES OF PROF'L CONDUCT R. 1.7 cmt. (2000).  New Jersey courts require strict adherence to this rule.  *See*, *e.g.*, *Comando v. Nugiel*, 436 N.J. Super. 203 (App. Div. 2014) (court found a law firm's continued representation on a transactional basis of limited liability company ("**LLC**"), the management company that leased LLC's realty, and individual owner of management company who was also 50% member of LLC, presented conflict of interest); *Gray v. Commercial Union Ins*. 191 N.J. Super. 590, 598 (App. Div. 1983) (court refused to permit an attorney to represent the plaintiff in employment litigation against the insurer when the attorney also represented the insurer in the defense of a completely unrelated personal injury matter); *Whitman v. Estate of Whitman*, 259 N.J. Super 256 (Law Div. 1992) (court disqualified an attorney from representing a wife suing the estate of her husband in state court while representing the husband's estate in an unrelated litigation in federal court); *State ex rel. S.G.*, 175 N.J. 132, 142 (2003) (law firm could not represent defendant accused of shooting and killing another of firm's clients).  Correspondingly, pursuant to RPC 1.7(a)(2), an attorney should not represent a client if there is a significant risk that the representation will be materially affected

by some responsibility to himself or to a third person including a former client.  *See* N.J. RPC

1.7(a); *See also Bukowiec ex rel. Estate of Bukowiec v. Adamo*, 2015 WL 9694381, at *5 (N.J.

Super. Ct. App. Div. Jan. 6, 2016) (an attorney cannot represent the defendant in a personal injury

action and the insurance company that may contribute to the settlement in the personal injury

action, in a separate action).

The Court has significant doubt over how Ms. Roper and Mr. Thyne will be able to

represent the estate without being materially limited and/or distracted by their own personal

financial stakes in the outcome of the case and their various competing roles in the case.  Ms.

Roper and Mr. Thyne are engaged in a dizzying amount of roles that involve them in almost every

aspect of this bankruptcy case.  Mr. Thyne is a principal of the Debtor, creditor of the Debtor, co-

counsel for the Debtor, co-counsel for himself individually, co-counsel to the QSF Trustee, co-

counsel to the QSF, defendant in a fraudulent conveyance action brought by Skepnek and Smoot,

potential defendant should the Trustee bring a preference and fraudulent conveyance action, and

co-counsel of record for the law firm Roper & Thyne.  Not to be outdone, Ms. Roper is a principal

of the Debtor, creditor of the Debtor, co-counsel for the Debtor, co-counsel for herself individually,

the QSF Trustee, co-counsel to herself as QSF Trustee, co-counsel to the QSF, defendant in a

fraudulent conveyance action brought by Skepnek and Smoot, potential defendant should the

Trustee bring a preference and fraudulent conveyance action, co-counsel of record for the law firm

Roper & Thyne and one of the plaintiffs in Bendit AP 2.  Ms. Roper takes on so many roles that

at times the Court has been forced to stop hearings just to find out who Ms. Roper is representing

and/or speaking on behalf of at that particular time.  Even then, the Court is not always clear since

the roles overlap and the arguments are oftentimes confusing.  Notably, the three adversary

proceedings in which Ms. Roper and Mr. Thyne are not participants (Bochetto AP, Bendit AP 1

and Skepnek AP) are ones in which they filed *Motions to Intervene*. *See*, *e.g.*, (Adv. Pro. No. 16-1151, Docket No. 59).

The Court does not need to search far and wide to find that two flagrant violations of RPC 1.7(a)(1) would occur, should the Court permit the requested retention. First, the principals of Roper & Thyne are currently creditors of the estate and undoubtedly hold an economic interest that would lessen the value of the bankruptcy estate. In fact, Ms. Roper currently holds a $25,000,000 claim against the estate, which is by far the largest filed claim in the case. If Roper & Thyne are retained to litigate the Trustee's Objection to Bendit's Claim, they would represent the estate in the main bankruptcy proceeding – the same bankruptcy proceeding where Ms. Roper and Mr. Thyne currently hold pre-petition claims against the estate. This is a blatant example of representing parties on opposite sides of a litigation, which RPC 1.7(a)(1) clearly prohibits. Second, even if the Trustee limits Roper & Thyne's retention to the adversary proceedings, Roper & Thyne would still advocate against the Trustee and the estate (in favor of itself) in the main bankruptcy case. All the while, Roper & Thyne would represent the Trustee and the estate in the adversary proceedings. This exemplifies litigating against a current client, which RPC 1.7(a) expressly prohibits. Without proper waiver, which likely could not be done in this type of bankruptcy scenario, RPC 1.7(a) prohibits this type of representation.

Correspondingly, the Court easily finds a potential violation of RPC 1.7(a)(2). The Trustee concedes that Ms. Roper and Mr. Thyne are personally invested in the claims objection process because every dollar saved increases the chances Ms. Roper and Mr. Thyne recover on their creditor claims. However, the Court can see at least one other reason: every dollar saved diminishes the Trustee's motivation to prosecute prospective preference and/or fraudulent conveyance claims against Ms. Roper, Mr. Thyne and/or the law firm Roper & Thyne. Hence, it

21

is not difficult to envision a scenario where the circumstances of the case dictate a settlement, but Ms. Roper and Mr. Thyne nevertheless push the case to trial.   If the hypothetical settlement depletes the estate of funds necessary to pay the unsecured creditors, the Trustee will be forced to pursue claims against Ms. Roper and Mr. Thyne.   Ms. Roper and Mr. Thyne admitted their interests are aligned with the Trustee in reducing creditor claims.   However, to the extent they show an interest in challenging claims, that is all they share in common.   Ms. Roper's and Mr. Thyne's ultimate interests lay in: 1) recovering dollars for themselves, and 2) ensuring the Trustee does not pursue them for any causes of action the estate may possess against them.   This Court cannot fathom how Roper & Thyne can give the Trustee neutral advice in those circumstances.

### B.   RPC 3.7

The retention of Roper & Thyne would also violate RPC 3.7, which states the following:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by RPC 1.7 or RPC 1.9.

N.J. RPC 3.7.  By the Trustee's own admission, "Ms. Roper and/or Mr. Thyne may be called to offer factual testimony with regards to the matters in issue."  (Docket No. 393 at 5).  The Trustee suggests that "Ms. Roper is more likely to act as a witness."  However, how can the Trustee be so certain?  One of the critical points of the Retention Application is how well-versed both Ms. Roper and Mr. Thyne are with the facts of the Prudential Litigation.  The Court is hard-pressed to believe the Objecting Creditors are going to pass up an opportunity to examine the most critical witnesses.

Perhaps they will, but one cannot speculate at this point what will occur at trial.  It is enough that

everyone recognizes the importance of these two individuals as fact witnesses.[11]

Assuming the Trustee together with Roper & Thyne are somehow able to cure all issues

described, the Court will examine the Retention Application pursuant to Section 327(e) of the

Bankruptcy Code.

## II.    *Section 327(e) of the Bankruptcy Code*

The Bankruptcy Code allows the trustee of a bankruptcy estate to employ professionals to

assist him in his duties. 11 U.S.C. §§ 327(a) and (e).  Section 327(e) of the Bankruptcy Code

provides that a trustee may retain counsel for a special purpose, as opposed to general

representation.  It states:

> [t]he trustee, with the court's approval, may employ, for a specified
> special purpose, other than to represent the trustee in conducting the
> case, an attorney that has represented the debtor, if in the best
> interest of the estate, and if such attorney does not represent or hold
> any interest adverse to the debtor or to the estate with respect to the
> matter on which such attorney is to be employed.

11 U.S.C. § 327(e); *In re G & H Steel Serv., Inc.*, 76 B.R. 508, 510 (Bankr. E.D. Pa. 1987); *In re*

*Argus Grp. 1700, Inc.*, 199 B.R. 525, 526 (Bankr. E.D. Pa. 1996) (observing that Congress

intended Section 327(e) to be used when the debtor is involved in complex litigation, and changing

the attorney in the middle of the case after the bankruptcy case has commenced would be

detrimental to the other litigation).

---

[11] On or around October 18, 2016, parties requested an emergency conference seeking an Order from the Court either
denying or granting Ms. Roper the ability to ask questions at an upcoming deposition of Mr. Gold.  On October 19,
2016, the Court (Honorable Vincent Papalia presiding) held a telephonic conference and issued a bench Order denying
Ms. Roper the ability to ask questions at the deposition.  The Court found: (1) allowing Ms. Roper to ask questions
would be too disruptive to the process; (2) Ms. Roper has too many connections to the case; and (3) there is no need
for Ms. Roper to ask questions when she is represented by counsel.

Under Section 327(e), special counsel may be appointed if: (1) the representation is in the best interest of the estate; (2) the attorney represented the debtor in the past; (3) the attorney is for a specific purpose approved by the court; and (4) the attorney does not represent or hold an interest adverse to the debtor or the debtor's estate. *See* 11 U.S.C. § 327(e); *In re Phila. Newspapers, LLC*, 408 B.R. 585, 597 (E.D. Pa. 2009); *Meespierson Inc. v. Strategic Telecom Inc.*, 202 B.R. 845, 848 (D. Del. 1996); *see also In re Brierwood Manor, Inc.*, 239 B.R. 709, 718 (Bankr. D.N.J. 1999) (noting that a Bankruptcy Court "must be given an opportunity to determine whether the continued representation by debtor's counsel is necessary and in the best interests of the estate before any services are provided."). When analyzing the retention of special counsel under Section 327(e), courts should consider the following:

> all relevant facts surrounding the debtor's case, including but not limited to, the nature of the debtor's business, all foreseeable employment of special counsel, the history and relationship between the debtor and the proposed special counsel, the expense of replacement counsel, potential conflicts of interest and the role of general counsel.

*See In re Woodworkers Warehouse, Inc.,* 323 B.R. 403, 406 (D. Del. 2005) (citing *In re First Am. Health Care of Ga., Inc.*, 1996 WL 33404562, *3 (Bankr. S.D. Ga. Apr.18, 1996)).

A.      **Retention for a "Special Purpose"**

Although the "special purpose" element is generally not the first element to be addressed in a Section 327(e) analysis, for reasons discussed below, the Court finds this to be the most problematic element out of the four and will address it first for that reason.

As already stated, retention of counsel under Section 327(e) must be "for a specified special purpose," meaning the trustee is not permitted to use this section to employ counsel to assist him in the general administration of the estate. *Congoleum Corp.*, 426 F.3d at 692 (holding that Section 327(e) cannot be utilized to employ counsel that actively participates in drafting of a Chapter 11

24

plan of reorganization and the general administration of the estate).  The plain language of Section

327(e) makes it clear that a trustee "may employ [counsel], for a specified special purpose, **other

than to represent the trustee in conducting the case**…."  11 U.S.C. § 327(e) (emphasis added).

Case law examining this quoted portion of the statute is limited.  However, a survey of available

case law illustrates a pattern where courts have refused to authorize the employment of special

counsel – whose services would overlap with those customarily reserved for general bankruptcy

counsel – regardless of how much familiarity with and understanding of the debtor's affairs special

counsel brings to the case.  *See, e.g.*, *In re Neuman,* 138 B.R. 683, 686 (S.D.N.Y. 1992)

(appointment of special counsel to assist the trustee in determining the allowable amount of a claim

was improper); *In re Hempstead Realty Assocs.*, 34 B.R. 624, 625 (Bankr. S.D.N.Y. 1983)

(retention of special counsel to provide debtor broad legal services including basic legal advice

with respect to its powers and duties as a debtor-in-possession, the preparation of applications,

answers, orders, reports, etc., and assistance in preparing a plan of arrangement was improper); *In

re S. Shore Golf Club Holding Co., Inc.*, 182 B.R. 94, 95 (Bankr. W.D.N.Y. 1995) (retention of

special counsel to prepare a disclosure statement and plan of reorganization was improper); *In re

Tidewater Mem'l Hosp., Inc.*, 110 B.R. 221, 227–28 (Bankr E.D. Va. 1989) (retention of special

counsel to advertise and negotiate proposals for the sale or reorganization of the debtor's primary

asset, including assisting the debtor with its plan of reorganization was improper).  Further insight

can be found in Colliers on Bankruptcy:

> [t]he reference to 'conducting the case' in Section 327(e) includes
> those matters that form a part of the administration of the case under
> the Code.  In a reorganization case, these matters include assisting
> in formulating a plan and assisting the trustee in carrying out
> required investigations; in a liquidation case, these matters may
> include examining the validity of liens and claims and collecting the
> assets of the estate when legal action is required.

3-327 Colliers on Bankruptcy P. 327.04 (16th ed. 2016).

Here, the proposed retention of Roper & Thyne exceeds the scope of Section 327(e) because: (1) Roper & Thyne will represent the Debtor in every major remaining legal action affecting the distribution of the Funds and liquidation of the bankruptcy estate;[12] and (2) Roper & Thyne's retention is not "for a special purpose other than to represent the trustee in conducting the case" within the meaning of Section 327(e).

First, at least five legal battles remain in this bankruptcy case that will dictate how this case will be administered going forward: (A) Bochetto AP; (B) Kansas Litigation; (C) Bendit AP 1; (D) Bendit AP 2; and (E) Trustee's Objection to Bendit's Claim. Once the five legal proceedings come to a resolution, either consensually or through adjudication, all non-insider claims will be fixed. This means that, unlike a usual Chapter 7 liquidation where the battle over the extent and validity of claims against the estate often occurs within the main bankruptcy proceeding, in this particular Chapter 7 liquidation the validity of the most significant non-insider claims will be decided in adversary proceedings either in front of this Court, in State Court, or in the District Court of Kansas. Ergo, in a practical sense, the Bochetto AP, the Kansas Litigation, Bendit AP 1 and Bendit AP 2 are extremely similar to a regular claims objection process in that their outcomes will have ramifications on which claims are allowed against the estate and, if allowed, to what extent. In fact, Roper & Thyne concedes in its *Letter Brief* that "the resolution of [Bendit AP 1 and the Bochetto AP] will have conclusory impact on the resolution of this bankruptcy case." (Docket No. 399 at 1).

Thus, the Trustee's retention of Roper & Thyne to be either lead counsel or second chair in all five matters (it is unclear from the Retention Application whether Roper & Thyne will be

---

[12] During oral argument, the Trustee's counsel directed the Court to administrative actions remaining for the Trustee but was unable to pinpoint any deciding issues other than the claims objections.

lead counsel in the Kansas Action, but it is clear that they will be involved in some capacity) goes to the heart of this bankruptcy case and will directly influence the administration of this case going forward. Indeed, the Third Circuit in *Congoleum Corp.* held that counsel whose legal services directly influence and assist in the general administration of the estate cannot be retained under Section 327(e). 426 F.3d at 691-92 (finding that retention of counsel to advise and assist the debtor with respect to insurance-related issues in connection with the formulation, negotiation and confirmation of a plan of reorganization is "far too expansive an assignment to be appropriate for an appointment under Section 327(e).")

Second, under the Retention Application, the proposed duties of Roper & Thyne appear to be duties that overlap with those of the Trustee or his general bankruptcy counsel. According to the Retention Application, "[t]he Trustee seeks authorization to employ Roper & Thyne, LLC as special counsel to the Trustee in connection with the claims objections [of Bochetto, Bendit and Skepnek and Smoot] … [and] to perform litigation services necessary during the claims objections, including appearing on behalf of the Trustee at hearings, discovery and oral argument." (Docket No. 393 at 15). Objecting to the allowance of claims goes to the heart of what a Chapter 7 Trustee does, so much so that it is expressly mentioned in Section 704 of the Bankruptcy Code. *See* 11 U.S.C. § 704(a)(5) ("[t]he trustee shall – (5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper"); *see also Brierwood Manor*, 239 B.R. at 717; *In re Piccoli*, 2006 WL 3371916, at *1 (Bankr. E.D. Pa. Nov. 14, 2006) ("§704(a)(5) mandates that a trustee examine proofs of claim and object to the allowance of any claim that is improper 'if a purpose would be served'").

In sum, the scope of Roper & Thyne's proposed employment appears to be "far too expansive an assignment to be appropriate for an appointment under § 327(e)." *See Congoleum*

*Corp.*, 426 F.3d at 692.  The "special purpose" for which Roper & Thyne would be employed in this case, assisting in the claims objection process, more properly falls under the ambit of Section 327(a), which allows for the employment of professionals to assist generally in the administration of the estate.  *See id*.  While it is totally appropriate under certain circumstances to retain special counsel to assist in the claims process, such retention must be limited in scope, which is not the case here.

### B.    "Best Interest" of the Estate

In discussing Section 327(e) retention and compensation, the Third Circuit requires that, "the attorney's employment must be in the best interest of the estate, which means property of estate is threatened and the need for services is real.  Employment cannot be based on some 'hypothetical or speculative benefit.'"  *In re Engel*, 124 F.3d 567, 575 (3d Cir.1997) (citing *In re Duque*, 48 B.R. 965 (S.D. Fla. 1984)).  Bankruptcy courts have discretion "to evaluate each case on its facts, taking all circumstances into account."  *In re BH & P, Inc.*, 949 F.2d 1300, 1315 (3d Cir. 1991) (further citations omitted); *see In re Kurtzman*, 220 B.R. 538, 540 (S.D.N.Y. 1998) (finding that the bankruptcy court did not abuse its discretion when it denied the retention of counsel based on "prior problems involving time records, billing errors, professional conduct, and overall costs of legal services that had led to its conclusion of loss of confidence in the firm.").

The Trustee asserts that Roper & Thyne's participation in the claims objection process would provide an "invaluable service to the estate."  (Docket No. 393 at 14).  The Trustee bases his prediction on the fact that Roper & Thyne agreed to work for free and they have an in-depth understanding of the facts of each adversary proceeding and claims asserted.  Indeed, the Court cannot simply overlook the value of free, experienced legal counsel.  However, unlike the Trustee,

the Court is not blinded by this promise and is reminded of the well-known adage "sometimes you get what you pay for."

The Trustee attached a 17-page Addendum to the Retention Application, but the Addendum is silent as to how Ms. Roper and Mr. Thyne have presented themselves to and interacted with this Court and creditors over the life of this case. The record is replete with complaints regarding Ms. Roper's and Mr. Thyne's lack of cooperation with the creditors and the Trustee on the issue of discovery and scheduling depositions. On multiple occasions, parties have been forced to call upon this Court to issue Orders directing Ms. Roper and Mr. Thyne to comply with simple discovery requests. In fact, Ms. Roper's and Mr. Thyne's continued failure to provide the Trustee with copies of the Debtor's basic financial documents forced the Trustee to file a motion to compel. (Docket No. 348). The Trustee himself has expressed multiple times on the record that Ms. Roper's and Mr. Thyne's failure to cooperate is delaying the administration of this case.

Nor is the Court blind to the fact that Ms. Roper and Mr. Thyne have a history of disregarding deadlines set by both the Federal Rules of Bankruptcy Procedure and this Court, such as when Ms. Roper and Mr. Thyne submitted an objection to an unrelated retention application two days before the scheduled hearing,[13] or when the Court permitted Ms. Roper (at her request) to submit an additional fact-only declaration, which was limited in scope, and she proceeded to submit legal arguments that should not have been included.[14] It is hard to believe that Ms. Roper and Mr. Thyne will change this pattern of behavior simply because they are retained by the Trustee.

---

[13] On December 2, 2016, the Trustee filed an *Application for Retention of Shook, Hardy & Bacon, L.L.P. as Special Counsel for the Trustee*. (Docket No. 339). The objection deadline was set for December 9, 2016 and the hearing was scheduled for December 23, 2016. Ms. Roper and Mr. Thyne filed an objection on December 21, 2016. (Docket No. 347).

[14] On August 16, 2016, the Court permitted Ms. Roper to file a five-page, fact-only declaration after the hearing since she was unable to accompany her counsel to the hearing. (Docket No. 251). However, multiple parties spotted legal arguments in the declaration and were forced to respond.

This Court believes that the opposite is true and instead retention by the Trustee will empower Ms. Roper and Mr. Thyne to further disregard the Rules and strategically cause further delays, as has already been done here.  This Court notes some similarity in behavior patterns exhibited in the Disciplinary Report censuring Ms. Roper and reprimanding Ms. Thyne.[15]  *See* (Docket No. 397-1).

The Trustee also seems to ignore Section 521(a)(3) of the Bankruptcy Code.  Pursuant to Section 521(a)(3), a debtor has a duty to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties ...."  11 U.S.C. § 521(a)(3).  As mentioned, such duties include "examin[ing] proofs of claim and object to the allowance of any claim that is improper."  11 U.S.C. § 704(a)(5).  So far as the Court knows, no one seeks to prevent the Trustee from working with Ms. Roper and Mr. Thyne to further the case.  In fact, it appears that the Trustee attempted to do so informally and formally.  Based upon what was previously conveyed to the Court, the Trustee was stymied in his efforts.  If Ms. Roper and Mr. Thyne refuse to comply with the Trustee's demands and their duties under Section 521, upon a proper request, the Court will provide the necessary motivation.

Furthermore, on January 17, 2017, Ms. Roper very clearly expressed, on the record, that her heavy case load and Mr. Thyne's poor health prevent her and Mr. Thyne from complying with overdue discovery requests.  Ms. Roper also indicated that they both have their own clients to serve and that those clients' needs take precedence over everything else, which required this Court to remind Ms. Roper of her obligations to this Court.  The Court has not received an explanation as to how Ms. Roper and Mr. Thyne will be able to effectively manage multiple additional

---

[15] In its decision, the Board noted that Ms. Roper "was disrespectful and disruptive, and engaged in repeated outbursts." (Docket No. 397-1 at 57).  Likewise, the Board noted that Ms. Roper defied a court directive and both Ms. Roper and Mr. Thyne behaved with a "lack of civility." (Docket No. 397-1 at 56-57).

litigations along with their existing caseloads if they either do not have the time or physical strength

to even comply with simple discovery requests.  The Court is hard-pressed to believe that this

Retention Application is the magic wand needed to suddenly clear Ms. Roper's schedule and cure

Mr. Thyne's illness.[16]  How can either Ms. Roper or Mr. Thyne all of sudden become the perfect

attorneys to represent the estate when they have demonstrated over and over their difficulties in

meeting the already existing demands of the case?  In sum, this Court has zero confidence that the

retention of Roper & Thyne would be in the best interest of this estate.[17]

Here, the Trustee failed to show that the retention of Roper & Thyne is for a specific

purpose and in the best interest of the estate.  The Court, therefore, does not need to analyze

whether Roper & Thyne represented the Debtor in the past or holds an interest adverse to the

Debtor or the Debtor's estate because the Trustee failed to meet the initial part of his burden under

Section 327(e).

### III.   *Section 327(a)*

Although not requested by the Trustee, in the alternative, the Court will analyze whether

Roper & Thyne may be retained pursuant to Section 327(a).  Section 327(a) states the following:

> [e]xcept as otherwise provided in this section, the trustee, with the
> court's approval, may employ one or more attorneys, accountants,
> appraisers, auctioneers, or other professional persons, that do not
> hold or represent an interest adverse to the estate, and that are
> disinterested persons, to represent or assist the trustee in carrying
> out the trustee's duties under this title.

11 U.S.C. § 327(a).  The Bankruptcy Code defines a "disinterested person" as one who "does not

have an interest materially adverse to the interest of the estate or any class of creditors or equity

---

[16] The Court sympathizes with Mr. Thyne regarding his health issues and wished him a speedy recovery.  But the
reliance on Mr. Thyne's frail health to delay matters cannot be ignored in evaluating the present issue before the Court.
[17] As exhibited by the Objecting Creditors, they do not believe their interests as creditors are served by the Trustee's
proposed Retention Application.  In examining the best interest of the estate, the Court does not need to go through
the burdens that will be placed upon the Objecting Creditors if this Court granted the proposed Retention Application.

security holders, by reason of any direct or indirect relationship to, connection with, or interest in,

the debtor, or for any other reason." 11 U.S.C. § 101(14)(c). An "adverse interest," in turn, is

usually defined to mean "any economic interest that would tend to lessen the value of the

bankruptcy or that would create either an actual or potential dispute in which the estate is a rival

claimant." *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005) (citing *TWI Int'l v. Vanguard*

*Oil Serv. Co.*, 162 B.R. 672, 675 (S.D.N.Y.1994)).

The phrase "actual conflict of interest," on the other hand, is defined on a case-by-case

basis using the specific facts of the case. *See BH & P Inc.*, 949 F.2d at 1315. The law in the Third

Circuit is that "Section 327[a] presents a *per se* bar to the appointment of a law firm with an actual

conflict, and gives the district court wide discretion in deciding whether to approve the

appointment of a law firm with a potential conflict." *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463,

477 (3d Cir.1998) (citing *BH & P*, 949 F.2d at 1308)

A conflict is deemed actual, and *per se* disqualifying, if "it is likely that a professional will

be placed in a position permitting it to favor one interest over an impermissibly conflicting

interest." *In re Pillowtex, Inc.*, 304 F.3d 246, 251 (3d Cir. 2002). Usually, professionals with a

potential conflict of interest are not approved for employment. *In re 22 Acquisition Corp.*, 2004

WL 870813, at *3 (E.D. Pa. Mar. 23, 2004). The parameters of Section 327(a) are strictly enforced

to ensure that employees of an estate do not have divided loyalties. *In re Harris Agency, LLC*, 451

B.R. 378, 390 (Bankr. E.D. Pa.) (citing *In re Raymond Prof'l Grp., Inc.*, 421 B.R. 891, 902 (Bankr.

N.D. Ill. 2009)), *aff'd sub nom. In re The Harris Agency, LLC*, 462 B.R. 514 (E.D. Pa. 2011).

Here, the Trustee admits that Roper & Thyne is not disinterested. (Docket No. 393 at 17).

Accordingly, the Court will not approve the Retention Application under Section 327(a).

## **CONCLUSION**

For the above mentioned reasons, the Trustee's Retention Application is denied.   This

Court will enter an accompanying Order memorializing this decision.

Dated:  February 24, 2017.

Honorable Stacey L. Meisel
United States Bankruptcy Judge