<u>**NOT FOR PUBLICATION**</u>

**Order Filed on July 5, 2017 by
Clerk, U.S. Bankruptcy Court -
District of New Jersey**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In Re:<br><br>Roper and Twardowsky, LLC,<br><br>                  Debtor. | Chapter 7<br><br>Case No.:    15-32878 (SLM)<br><br>Judge:    Hon. Stacey L. Meisel |

**OPINION**

**A P P E A R A N C E S :**

Michael J. Connolly, Esq.
LeClairRyan P.C.
One Riverfront Plaza
1037 Raymond Boulevard
Sixteenth Floor
Newark, New Jersey 07102
***Counsel for Trustee, Charles M. Forman***

Jay Rice, Esq.
Nagel Rice, P.C.
103 Eisenhower Parkway
Roseland, New Jersey 07068
***Counsel for Bendit Weinstock P.A.***

Kenneth Thyne, Esq.
Roper & Thyne, LLC
77 Jefferson Place
Totowa, New Jersey 07512
***Counsel for Angela Roper and Kenneth Thyne***

William J. Skepnek, Esq.
1 Westwood Road
Lawrence, Kansas 66044
***On behalf of himself and Steven M. Smoot, Esq.***

**THE HONORABLE STACEY L. MEISEL, UNITED STATES BANKRUPTCY JUDGE**

**INTRODUCTION**

Before the Court is a motion filed in Case Number 15-32878 ("**Main Case**") by Bendit Weinstock P.A. ("**Bendit**" or "**BW**") seeking to amend its timely filed proof of claim (the "**Motion to Amend**"). (Main Case, Docket No. 298). The Chapter 7 Trustee, Charles M. Forman (the "**Trustee**"), creditors William J. Skepnek and Steven M. Smoot (collectively "**Skepnek & Smoot**") and the debtor's principals, Angela Roper ("**Ms. Roper**") and Kenneth Thyne ("**Mr. Thyne**") (collectively, "**Debtor's Principals**"), oppose the Motion to Amend. (Main Case, Docket Nos. 304, 308 and 313).

On November 4, 2016, the parties appeared before this Court for oral argument. At the close of the hearing, the Court reserved decision and ordered further briefing on a number of issues, including the informal proof of claim doctrine. Bendit, the Trustee, and the Debtor's Principals each proceeded to submit supplemental briefing. (Main Case, Docket Nos. 333, 336 and 334). Pursuant to Federal Rule of Bankruptcy Procedure 7052, the Court issues the following findings of fact and conclusions of law.[1]

**JURISDICTION AND VENUE**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 and amended September 18, 2012. This matter concerns the administration of the bankruptcy estate and relates to the allowance, disallowance, and determination of claims against

---

[1] To the extent any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent any conclusions of law might constitute findings of fact, they are adopted as such.

the estate.  It constitutes a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (B).  Venue

is proper under 28 U.S.C. §§ 1408 and 1409.

<u>**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**</u>

I.      *Pre-Petition New Jersey State Court Proceedings*

At its core, Roper and Twardowsky, LLC's (the "**Debtor**") bankruptcy case involves

disputes over respective rights to settlement proceeds between the Debtor and a number of law

firms, including, but not limited to, Bendit, that once served as the Debtor's co-counsel in a

litigation against Prudential Life Insurance Company ("**Prudential**") (the "**Prudential**

**Litigation**").[2]  Many factual aspects of the Debtor's and Bendit's co-counsel relationship are

convoluted and are also the subject of an ongoing litigation in an adversary proceeding before this

Court.  The Court will limit its recitation of the facts to those facts that are most pertinent to the

instant motion.[3]

A.      **The Prudential Litigation**

During the Prudential Litigation, the Debtor represented approximately 163 plaintiffs (the

"**Prudential Plaintiffs**").  Like many other large and complex litigations, the Debtor sought help

in its representation of those plaintiffs from various other law firms and attorneys.  Bendit joined

the Debtor as co-counsel in the Prudential Litigation in August 2007 and served as the Debtor's

only co-counsel until Bendit was discharged in April 2011.  The Debtor and Bendit agreed to

represent the Prudential Plaintiffs for a combined net contingent fee of 40%.  *See* (Proof of Claim

No. 5 at 4).  It appears the co-counsel agreement between the Debtor and Bendit consisted of

---

[2] The Prudential Litigation was venued in New Jersey Superior Court, Bergen County ("**Bergen County Superior Court**").

[3] For a more thorough recitation of the facts of the case, the Court directs the parties to review previous written decisions, *In re Roper and Twardowsky, LLC*, 559 B.R. 375 (Bankr. D.N.J. 2016), *In re Roper & Twardowsky, LLC*, 566 B.R. 734 (Bankr. D.N.J. 2017)*, and *In re Roper and Twardowsky*, LLC, No. 16-5485 (SDW), 2016 WL 7322787 (D.N.J. Dec. 14, 2016), which facts are incorporated as if set forth fully herein.

numerous oral representations and a single writing composed of one sentence.   The writing indicates the Debtor and Bendit agreed to split any attorney's fees earned with 60% going to the Debtor and 40% to Bendit.   Accordingly, under the fee-splitting agreement, Bendit would receive 16% from any potential settlement with or verdict against Prudential.

In November 2010, a global settlement with an opt-out provision was reached with Prudential (the "**First Prudential Settlement**").   Subsequently, the clients who opted into the First Prudential Settlement were paid in full and the associated counsel fees were disbursed to the Debtor and Bendit.   At the same time, a minority of the Prudential Plaintiffs chose to opt out of the First Prudential Settlement.   The Prudential Litigation continued with respect to those remaining plaintiffs.

Sometime after the First Prudential Settlement, it appears Bendit stopped serving as the Debtor's co-counsel and performed no further services for the clients that opted out.[4]   On June 11, 2011, the Honorable Brian Martinotti ("**Judge Martinotti**")[5] entered an Order relieving Bendit as the Debtor's co-counsel.   *See* (Main Case, Docket No. 298-2 at 25).   In that Order, Judge Martinotti addressed Bendit's right to further payment of attorney's fees in connection with the Prudential Litigation.   Judge Martinotti stated the following:

> 1.  Bendit Weinstock is hereby relieved as counsel for all plaintiffs who have not accepted the global settlement . . . .

---

[4] The surrounding facts as to why Bendit stopped serving as the Debtor's co-counsel remain in dispute and are the subject of Adversary Proceeding Case 16-01151(the "**Passaic AP**").

[5] At the inception of the Prudential Litigation, Judge Martinotti served on the Bergen County Superior Court.   On July 11, 2016, Judge Martinotti began serving as a District Court Judge for the United States District Court, District of New Jersey.   All references in this opinion to any decision/action by Judge Martinotti refer to the time when Judge Martinotti served on the Bergen County Superior Court.

> 2. Bendit Weinstock's lien for services shall be determined at the
> time of resolution of this matter and shall not exceed 16% of the
> amount previously offered to each plaintiff who opted out from the
> global settlement plus costs.

(*Id*. at 25-26).

After Bendit was relieved as counsel, the Debtor hired a number of other law firms. Along with the other firms, the Debtor proceeded to represent the remaining Prudential Plaintiffs. In December 2013, the remaining Prudential Plaintiffs agreed to a second and final settlement with Prudential (the "**Second Prudential Settlement**"). The settlement funds from the Second Prudential Settlement were placed in the Roper and Twardowsky Qualified Settlement Fund ("**QSF**"). Shortly after the QSF was established, all remaining Prudential Plaintiffs received their settlement payments. The remaining funds in the QSF were for attorney's fees and administrative expenses, if any.

Soon after the QSF was established, Bendit filed an attorney charging lien in the Prudential Litigation in the amount of $2,011,562.85. Bendit asserts the $2,011,562.85[6] amount was calculated under the guidelines of Judge Martinotti's June 2011 Order, *i.e.*, 16% of the amount previously offered to each plaintiff who opted out of the First Prudential Settlement plus costs. (Proof of Claim No. 5 at 5). The Debtor opposed Bendit's attorney charging lien, which eventually led to Bendit filing a motion for summary judgment. In November 2014, Judge Martinotti issued an oral decision on the record denying Bendit's attorney charging lien and directing the parties to negotiate the value of Bendit's claim in good faith using *quantum meruit*. *See* (Main Case, Docket No. 298-2 at 33-35).

---

[6] Bendit has since admitted the amount allowable from the QSF is slightly less. *See* (Adv. Pro. 16-01150, Docket No. 65). But for the purposes of today's decision, the Court will utilize the $2,011,562.85 amount.

### B.    Passaic County Litigation

While the Prudential Litigation was winding down in Bergen County Superior Court, the Debtor and its principal, Ms. Roper, initiated a separate lawsuit against Bendit and one of its partners, William Gold, Esq., in New Jersey Superior Court, Passaic County ("**Passaic County Superior Court**").[7]  On July 31, 2014, the Debtor and Ms. Roper filed an amended complaint asserting the following causes of action: (1) First Count – Breach of Contract ("**Count One**"); (2) Second Count – Negligent Misrepresentation ("**Count Two**"); (3) Third Count – Breach of Fiduciary Duty ("**Count Three**"); and (4) Fourth Count – Defamation and Defamation *Per Se* ("**Count Four**").  *See* (Passaic AP, Docket No. 1 at 5-11).  On July 6, 2015, Bendit and Mr. Gold filed an amended answer (the "**Answer**") denying all allegations and asserting ten separate defenses as well as the following counterclaims: (1) First Count – *Quantum Meruit* ("**Counterclaim One**"); (2) Second Count – Tortious Interference with Contract ("**Counterclaim Two**"); and (3) Third Count – Tortious Interference with Prospective Economic Advantage ("**Counterclaim Three**") (collectively, the "**Counterclaims**").  (*Id*. at 13-24).  Each of the three counterclaims contains the following "WHEREFORE" clause:

> WHEREFORE, Defendants-Counterclaimants William Gold, Esq. and Bendit Weinstock P.A. request judgment against Plaintiffs-Third Party Defendants Roper & Twardowsky, LLC and Angela M. Roper, Esq. for compensatory damages together with interests, attorneys' fees and costs as permitted by law.

(*Id*. at 20-22).  The Passaic County Litigation pertains solely to disputes surrounding the First Prudential Settlement.  In other words, the Counterclaims have no direct impact on the division of attorney fees derived from the Second Prudential Settlement.  The Debtor listed the Passaic County

---

[7] The action was titled *Roper and Twardowsky, LLC and Angela M. Roper v. William Gold, Esq., and Bendit Weinstock, P.A.*, Superior Court of New Jersey, Law Division – Passaic County, Master Docket No.: PAS-L-2556-14 ("**Passaic County Litigation**").  The Honorable Thomas J. LaConte ("**Judge LaConte**") presided over the matter.

Litigation as an asset of the estate on Schedule B and as an active legal action on the Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy. *See* (Main Case, Docket No. 35 at 7, 16). The Debtor made significant changes when it amended its schedules in May 2016, however, the Passaic County Litigation remained on Schedule B and the Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy. *See* (Main Case, Docket No. 112 at 7, 22).

## II.   *Post – Petition Background*

On December 4, 2015, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. (Main Case, Docket No. 1).

In January 2016, the Debtor deposited $7,790,526.04 from the QSF with the Registry Fund of this Court. Certain approved fees, expenses, and settlements have already been paid from the funds pursuant to various Orders entered by this Court. Further, on January 22, 2016, a number of creditors, including Bendit, filed a *Joint Motion to Convert Bankruptcy Case to Chapter 7*. (Main Case, Docket No. 39). On February 23, 2016, following oral argument, the Court entered an Order converting the case to Chapter 7. (Main Case, Docket No. 51). On February 29, 2016, the Trustee was appointed and the deadline for all creditors to file a proof of claim was set for July, 28, 2016 (the "**Bar Date**"). (Main Case, Docket Nos. 55 and 56).

### A.   **Passaic County Litigation Removed to the Bankruptcy Court**

On February 26, 2016, Bendit filed a *Notice of Removal of Civil Claim to Bankruptcy Court* ("**Notice of Removal**") and removed the Passaic County Litigation to this Court. (Passaic AP, Docket No. 1). The Notice of Removal contained the following language:

> [t]he [Passaic County Litigation] has a clear and direct impact on property of the estate under 11 U.S.C. § 541. Resolution of the [Passaic County Litigation] may significantly affect the administration of the estate and may involve the allowance or

8

> disallowance of the [Passaic County Litigation] against the estate,
> counterclaims by the estate, attempts to obtain property of the estate,
> and proceedings affecting the liquidation of assets of the estate and
> the adjustment of the debtor/creditor relationship.

(*Id*. at 2-3).  As part of the removal, on March 7, 2017, Bendit filed the Passaic County Litigation

record on the Passaic AP docket (the "**Record**").  *See* (Passaic AP, Docket No. 3).  The Record

includes: (1) all of the Passaic County Litigation pleadings, which includes Bendit's Answer and

Counterclaims; (2) a *Motion to Disqualify Counsel*[8] filed by Bendit in the Passaic County

Litigation; (3) *Certification of William Gold, Esq*. and *Certification of Randee M. Matloff* in

support of the *Motion to Disqualify Counsel*; (4) a copy of the contract between the Debtor and

Bendit; (5) copies of certain communications between the Debtor and Bendit; (6) a copy of the

Passaic County Superior Court Order directing the Debtor and Bendit to attend mediation; and

(7) copies of letter correspondences with Judge LaConte.  (*Id*. at 1-79).

Since February 2016, the substance of the Passaic County Litigation has drastically

changed.  On May 10, 2016, the Debtor filed a *Consolidated Motion to Abstain and/or Remand*

("**Remand Motion**") requesting that this Court either refrain from exercising authority over the

Passaic AP or abstain from hearing the matter.  (Passaic AP, Docket No. 7).  Bendit opposed the

Remand Motion.  Due to a multitude of reasons not relevant to this decision, the Remand Motion

was not heard until March 24, 2017.  At the hearing, the Trustee – who now stands in the shoes of

the Debtor – withdrew the Remand Motion as to all counts, except Count Four.  Bendit's counsel

subsequently withdrew its opposition.  On March 29, 2017, the Court entered an Order remanding

Count Four back to Passaic County Superior Court.  (Passaic AP, Docket No. 32).

---

[8] On October 22, 2014, Bendit filed a motion to disqualify Mr. Thyne and the Debtor as counsel.  (Passaic AP, Docket No. 3 at 17-18).

Additionally, back on January 31, 2017, Bendit filed a motion for *Summary Judgment to Dismiss Amended Complaint*.  (Passaic AP, Docket No. 18).  The Trustee opposed the motion.  However, in its response, the Trustee withdrew Count Three because it was "duplicative" of Count One.  (Passaic AP, Docket No. 21 at 2).  On April 6, 2017, the parties appeared before the Court for oral argument on the summary judgment motion, during which the Trustee also withdrew Count Two because it could not differentiate Count Two from Count One.  Consequently, the Debtor's estate is only left with one cause of action (Count One) against Bendit, while Bendit still maintains all three of its Counterclaims against the Debtor's estate.  The Court reserved and has yet to issue a decision on the summary judgment motion.

### B.      Bendit's Proof of Claim No. 5

Bendit timely filed a proof of claim on the Claims Register on June 9, 2016 ("**Claim No. 5**").  *See* (Proof of Claim No. 5-1).  At the time, Bendit alleged it possessed a $4,000,000 unsecured claim against the Debtor for unpaid attorney's fees and intended the entire claim to be paid from the funds formally held by the QSF.  The calculation of Claim No. 5 is not entirely clear on its face.  However, at the November 4, 2016 hearing, Bendit indicated on the record that Claim No. 5 breaks down into the following: (1) $2,011,562.85 for unpaid legal fees from the Second Prudential Settlement; and (2) $1,988,437.15 for additional monies the Debtor owes to Bendit from the First Prudential Settlement.  Bendit contends its claim is premised on Judge Martinotti's ruling that Bendit's claim for attorney's fees should be calculated using *quantum meruit*.  (Proof of Claim No. 5-1 at 5-6).  In relevant part, Claim No. 5 provides the following:

> [b]ased upon [Judge Martinotti's] ruling that Bendit Weinstock is entitled to quantum meruit the amount of this creditor's total claim is increased to $4,000,000.00 since the amount received on the first part of the settlement was calculated based upon the contract

10

> between the parties and not on quantum meruit. Utilizing quantum
> meruit the Debtor owes the additional monies to Bendit Weinstock.

(*Id.* at 6).  Claim No. 5 does not expressly mention the Passaic County Litigation.  However, at the November 4, 2016 hearing, Bendit clarified on the record that the $1,988,437.15 figure represents the estimated damages under Counterclaim One.

On August 15, 2016, the Trustee filed a motion seeking an order from the Court fixing the maximum amount Bendit can recover from the funds formally held by the QSF.  (Main Case, Docket No. 246).  On September 30, 2016,[9] this Court entered an Order, consensually submitted by the Trustee and Bendit, ordering that the "maximum amount of Bendit Weinstock, P.A.'s Proof of Claim payable from the funds on deposit with this Court representing the balance of the Roper & Twardowsky Qualified Settlement Trust Fund . . . shall not exceed the sum of $2,011,562.85." ("**September Order**").  *See* (Main Case, Docket No. 293).  Further, the Order designated the remaining portion of Claim No. 5, $1,988,437.15, as a general unsecured claim against the Debtor's estate – if allowed – and not recoverable from the funds formally held by the QSF.  (*Id.*)

## III.    *Bendit's Motion to Amend Proof of Claim No. 5*

On October 11, 2016, Bendit filed the Motion to Amend.  Bendit seeks to amend Claim No. 5 to increase its overall claim to $5,611,562.80.  (Main Case, Docket No. 298-2 at 5).  Bendit concedes that the maximum amount recoverable from the QSF is $2,011,562.85 and the remaining claim sought – totaling approximately $3,599,999.95 – constitutes a general unsecured claim against the Debtor's estate.  (*Id.* at 4, n.1).

---

[9] The *Rider to Amended Proof of Claim of Bendit Weinstock, P.A.* attached to the *Certification of Jay J. Rice* states the following: "[o]n September 30, 2106[sic] the court entered an order, on consent, limiting BW's claim payable from the QSF to a maximum of $2,011,562.85, but providing that any remaining portion would be treated as a general unsecured claim of the Debtor."  (Main Case, Docket No. 298-2 at 9).

Unlike the original Claim No. 5, the proposed amendment to Claim No. 5 incorporates Counterclaims Two and Three and splits the proof of claim into three parts.  The first part is a claim for attorney's fees in connection with the Second Prudential Settlement.  Bendit's proposed amendment states the following: "[i]ts fee on the $12.5 million settlement from the non-settling plaintiffs capped at $2,011,562.85 to be paid from the QSF in an amount to be determined by quantum meruit pursuant to Judge Martinotti's decision." (*Id.* at 9).  This is a direct claim against the monies previously held in the QSF ("**Part I**"). (*Id.*)  Bendit requested Part I in the original Claim No. 5.  The second portion relates to Counterclaim One.  In relevant part, Bendit's proposed amendment states the following:

> [i]n the [Passaic AP] arising from the removal of a pre-petition action commenced by Angela Roper and Debtor against BW and William Gold . . . . BW, by way of offset or counterclaim, in the adversary proceeding, asserts it was underpaid on the first settlement.  BW seeks 80%, not 40%, of the legal fees as the quantum meruit evaluation of this reallocation of fees between it and the Debtor.

(*Id.*)  Although not clearly written, the parties acknowledged that the amount requested in Claim No. 5 after subtracting $2,011,562.85 directly relates to Counterclaim One.  When Bendit filed Claim No. 5, it estimated $1,988,437.15 in damages associated with Counterclaim One.  Now, in the proposed amended proof of claim, Bendit estimates it should recover approximately $2,400,000 in damages if it earns a favorable decision on Counterclaim One ("**Part II**"). (*Id.* at 9-10).  In other words, Bendit seeks to increase its claim on this portion by $411,562.85.

The third part of the proposed amendment pertains to Counterclaims Two and Three.  In relevant part, Bendit's proposed amendment states the following:

> [i]n the [Passaic AP], BW also asserts a claim for tortious interference.  The gravamen is that Debtor induced the non-settling plaintiffs to discharge BW . . . . The motive for this tortious interference was to allow Debtor – and now the Trustee – to deprive

> BW of its rightful fees in representing those plaintiffs, keeping 40%
> split of the fees owed to BW for itself.

(*Id*. at 10).  Bendit estimates the damages from Counterclaims Two and Three are approximately

$3,200,000 less the amount Bendit will receive from the monies formerly held in the QSF.  (*Id*. at

10-11).  Bendit estimates this figure to be approximately $1,200,000 ("**Part III**").  (*Id.*)

The Trustee, Skepnek & Smoot, and the Debtor's Principals (collectively, the "**Amended

Claim Objectors**") opposed the Motion to Amend.  *See* (Main Case, Docket Nos. 304, 308, and

313).  The parties made no objections to Part I of the amendment.  With respect to Part II, the

parties conceded at oral argument that Claim No. 5 addressed Counterclaim One and the

amendment only serves to increase the value of the original claim from $1,988,437.15 to

$2,400,000.00 without in any way altering the nature of the claim itself.  Nevertheless, the

Amended Claim Objectors urge the Court to disallow the proposed amendment alleging

Counterclaim One is futile as a matter of law.  *See* (Main Case, Docket Nos. 304 at 9-10, 308 at 4

and 313 at 5-6).  In relation to Part III, the Amended Claim Objectors argue that: (1) Counterclaims

Two and Three are wholly new claims that are in no way related to any allegations made in Claim

No. 5; and (2) Counterclaims Two and Three are futile as a matter of law.

At oral argument, Bendit made a series of arguments suggesting to the Court that the

proposed amendment does not contain new claims.  First, Bendit insisted any amendment

pertaining to Counterclaim One is merely an increase of the amount of the claim based upon

additional information received since Claim No. 5 was filed, and is therefore not a new claim.

Second, Bendit argued that Counterclaims Two and Three were only new theories of recovery on

facts already alleged in Claim No. 5.  To this end, Bendit asserted Counterclaims Two and Three

were not new claims *per se* since they were originally asserted over a year before the Bar Date as

counterclaims in the Passaic County Litigation and were again reasserted when Bendit removed

the Passaic County Litigation to this Court.  In other words, the Amended Claim Objectors were on notice of Counterclaims Two and Three.  At some point during oral argument, the Trustee agreed with Bendit that Counterclaims Two and Three might constitute a set-off to the Passaic County Litigation, if the Court denied the proposed amendment.

The Court recognized that a portion of Bendit's arguments unwittingly included a crude attempt to invoke the informal proof of claim doctrine.  Since no party, including Bendit, briefed the informal proof of claim doctrine, the Court requested supplemental, simultaneous briefing on the following issues: (1) whether Counterclaims Two and Three (Part III) constitute an informal proof of claim; (2) assuming Counterclaims Two and Three constitute an informal proof of claim, whether the informal proof of claim was superseded by Bendit filing Claim No. 5; and (3) assuming Counterclaims Two and Three do not constitute an informal proof of claim, whether Bendit may still pursue Counterclaims Two and Three for the purposes of a set-off.

Accordingly, on November 22, 2016, Bendit, the Trustee, and the Debtor's Principals submitted supplemental briefing.  *See* (Main Case, Docket Nos. 333, 334, and 336).  Not surprisingly, Bendit took the position that Counterclaims Two and Three constitute an informal proof of claim.  Bendit's analysis relies heavily on *In re Petrucci*, 256 B.R. 704 (Bank. D.N.J. 2001), wherein the court held that an adversary complaint filed by a creditor constituted an informal proof of claim.  *See* (Docket No. 333 at 10-16).  Next, Bendit contends it was unable to find any cases that are "on all fours with the instant action" that would provide direct guidance as to whether the informal proof of claim was superseded by the formal proof of claim.  (*Id*. at 16). However, Bendit maintains "[i]f someone is diligent enough to timely file a proof of claim, they should not be penalized by being precluded from amending their proof of claim to include claims properly raised, albeit informally, prior to the bar date."  (*Id*. at 18).  Lastly, Bendit contends that,

if the Court rejects the informal proof of claim arguments and denies the Motion to Amend, Bendit should still be entitled to pursue the counterclaims by way of set-off or recoupment. (*Id*. at 19-21).

The Trustee's and the Debtor's Principals' supplemental submissions assert strikingly similar arguments. The parties assert Bendit is too sophisticated of a party for the informal proof of claim doctrine to apply. The parties cite to *In re Grubb*, 169 B.R. 341 (Bankr. W.D. Pa. 1994), where the court rejected a creditor's informal proof of claim argument because it found the creditor was sophisticated, intimately engaged in the debtor's case, and received notice of the claims bar date. *See* (Main Case, Docket Nos. 334 at 2-3 and 336 at 3-4). The parties also cite to *In re Han-Hsien Tuan*, No. CIV. 2:13-00324 (WJM), 2013 WL 5719505, at *1 (D.N.J. Oct. 21, 2013), where the court issued a holding similar to *Grubb,* and *In re Outboard Marine Corp.*, 386 F.3d 824, 826 (7th Cir. 2004), where the court refused to invoke the informal proof of claim doctrine because the creditor possessed actual knowledge of the bar date. *See* (Main Case, Docket Nos. 334 at 2-3 and 336 at 3-4). Moreover, the Trustee raises the question as to whether the Notice of Removal is too vague and does not make an affirmative enough demand upon the estate to constitute an informal proof of claim. (Main Case, Docket No. 336 at 3). However, the Trustee concedes that at least one court, specifically*,* the United States District Court, Southern District of Texas, in *Mata v. Schoch*, 337 B.R. 138 (S.D. Tex. 2005), has held that a notice of removal may constitute an informal proof of claim. The Debtor's Principals do not address this issue.

The Trustee and the Debtor's Principals likewise agree that, even if the Court finds the informal proof of claim doctrine applicable, Claim No. 5 supersedes any prior informal proof of claim and therefore Bendit's omitted claims should be deemed waived or abandoned. *See* (Main Case, Docket Nos. 334 at 3 and 336 at 5-6).

15

## DISCUSSION

I.    *Informal Proof of Claim Doctrine*

A.    **Legal Standard**

Federal Rule of Bankruptcy Procedure 3002(a) requires creditors to file a formal proof of claim regardless of whether the debtor listed the creditor's claim in the bankruptcy schedules it filed with the court.  Fed. R. Bankr. P. 3002(a).  However, it is well accepted that the bankruptcy courts are guided by the principles of equity, and that the courts will act to assure that "fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done."  *Pepper v. Litton*, 308 U.S. 295, 305 (1939).  Accordingly, where a creditor fails to file a formal proof of claim prior to the bar date, bankruptcy courts sometimes permit a claim to proceed on the theory that another document may be deemed an "informal proof of claim."  *Am. Classic Voyages Co. v. Official Comm. (In re Am. Classic Voyages Co.)*, 405 F.3d 127 (3d Cir. 2005).  "The informal proof of claim doctrine permits a bankruptcy court to treat a late formal proof of claim as timely because it relates back to a document—the informal proof of claim—filed before the bar date."  *Han-Hsien Tuan*, 2013 WL 5719505, at *5 (citing *Grubb*, 169 B.R. at 347).

The Third Circuit uses a five-part test to determine whether a document qualifies as an informal proof of claim.  *Am. Classic Voyages Co.*, 405 F.3d at 130–31.  Specifically, a document constitutes an informal proof of claim if: (1) it is in writing; (2) it contains a demand by the creditor on the estate; (3) it expresses an intent to hold the debtor liable for the debt; (4) it is filed with the bankruptcy court; and (5) given the facts of the case, it would be equitable to treat the document as a proof of claim.  *Id*.  A document must satisfy each part of this test to qualify as an informal proof of claim.  *Id.*; *Petrucci*, 256 B.R. at 706 (outlining the same five-part test).

16

In regard to the second prong, the Third Circuit established that "[i]n order to constitute an informal proof of claim, the alleged demand must be sufficient to put the debtor and/or the court on notice as to 'the existence, nature and amount of the claim (if ascertainable).'" *Am. Classic Voyages Co.*, 405 F.3d at 131 (quoting *Charter Co. v. Dioxin Claimants (In re Charter Co.)*, 876 F.2d 861, 863 (11th Cir. 1989). The Third Circuit also opined that "the substantive requirements of a proof of claim, including the notice requirement, cannot be significantly relaxed for 'informal' proofs of claims. The distinction between formal and informal proofs of claim refers only, as the terms suggest, to their form, not their substance." *Id.* (citing Fed. R. Bankr. P. 5005(a)(1)). Furthermore,

> [a]ll proofs of claim must 'conform substantially to the appropriate Official Form.' Fed. R. Bankr. P. 3001(a). Official Bankruptcy Form 10, 11 U.S.C., defines a 'proof of claim' as a 'form telling the bankruptcy court how much the debtor owed a creditor at the time the bankruptcy case was filed (the amount of the creditor's claim),' and instructs a potential creditor to specify, among other things, the date debt was incurred and the total amount of her claim, as well as to attach documents that show the debtor owes the debt claimed.

*Am. Classic Voyages Co.*, 405 F.3d at 131. At least one court within the Third Circuit has interpreted the *Am. Classic Voyages Co.* holding to indicate that all informal proofs of claim must contain the exact amount of the claim and the date it was incurred. *See Bethas v. Young,* No. 1-13-CV-1468, 2013 WL 5288769, at *1 (M.D. Pa. Sept. 18, 2013).

In *Bethas*, the district court affirmed the bankruptcy court's decision not to recognize an objection to a Chapter 13 plan confirmation as an informal proof of claim. 2013 WL 5288769, at *2. The creditor's objection provided that the creditor was the former spouse of the debtor and that he held an unsecured priority claim against his ex-spouse's estate for unpaid domestic support. *Id*. at *1. The court noted that "it is particularly significant that the [o]bjection omits the amount of the claim and the date it was incurred, which are two substantive requirements of a formal proof

17

of claim" under the Third Circuit's instruction in *Am. Classic Voyages Co. Bethas*, 2013 WL 5288769, at *2.

The Third Circuit's analysis in *Am. Classic Voyages Co*. ended with the second prong, so the court did not consider the remaining four prongs. 405 F.3d at 133 n.8 ("[b]ecause we concluded that the letter fails the second part of the five-part test, we need not consider whether the February 7, 2002 letter would meet the other four factors."). Consequently, when addressing the fifth prong of the test – whether it would be equitable to treat the document as an informal proof of claim – courts within the Third Circuit have not adopted a unilateral approach. A prime example of this is illustrated by the briefs submitted by the opposing parties herein.

To start, Bendit's argument is primarily based on the *Petrucci* case where, in analyzing the fifth prong, the court concentrated on the impact the allowance of the informal proof of claim would have on the estate and its creditors. 256 B.R. at 707. Specifically, the court focused on whether: (1) any creditor detrimentally relied on the receipt of a particular percentage of the estate; and (2) the disallowance of the proof of claim creates a windfall for the remaining creditors. *Id.* In *Petrucci*, the Chapter 7 trustee objected to the allowance of a potential unsecured claim because, among other things, it would cause a reduction of the pool of assets available for other unsecured creditors. 256 B.R. at 706. However, the *Petrucci* court rejected this argument finding that there is no such prejudice absent a detrimental reliance by other creditors on receipt of a particular percentage. *Id*. at 707. The court reasoned that it would be inequitable to disallow the informal proof of claim since, if the claim had merit, disallowing it would create a windfall for the remaining creditors. *Id*. Moreover, if the claim is in fact meritless, the Chapter 7 Trustee would have an opportunity to expunge the claim at a later time. *Id*.

Although not cited in Bendit's briefs, this Court notes that this analytical approach was adopted by another court in *In re Cavalier Indus., Inc.*, where a Chapter 7 Trustee made a similar objection, arguing that allowing the claims would significantly reduce the distribution to other unsecured creditors.  No. 99-31737 DWS, 2003 WL 716291, at *3 (Bankr. E.D. Pa. Feb. 6, 2003). There, too, this argument met swift rejection.  *Id.*  The *Cavalier Indus.* court stated that "unsecured creditors are claimants of equal legal rank entitled only to share *pro rata* in whatever remains after payment of secured and priority claims" so, unless there is a showing that a creditor detrimentally relied on a particular percentage, equity requires treating the document as an informal proof of claim.  *Id.* (citing *In re 266 Wash. Assos*, 141 B.R. 275, 282 (Bankr. E.D.N.Y. 1992)).

Next, the Trustee and the Debtor's Principals highlight a different analytical approach. This approach focuses on whether the claimant: (1) is sophisticated; (2) had actual notice of the bar date; and (3) was intimately involved in the debtor's bankruptcy case.  *Grubb*, 169 B.R. at 348; *Han-Hsien Tuan*, 2013 WL 5719505, at *5 (citing *Outboard Marine Corp.*, 386 F.3d at 828); *see Rosenblum*, 545 B.R. at 860 (finding it equitable to treat a motion to dismiss as informal proof of claim when the claimant was a *pro se* litigant).  In *Han-Hsien Tuan*, the district court affirmed the bankruptcy court's decision not to apply the informal proof of claim doctrine since the claimant, "a law firm, was a sophisticated creditor represented by one of its own attorneys before the bankruptcy court." 2013 WL 5719505, at *5.  In the same breath, the *Han-Hsien Tuan* court noted that attorneys practicing in the bankruptcy court are charged with a general knowledge of the Federal Rules of Bankruptcy Procedure and are expected to follow said rules.  *Id.*  (citing *In re Fink*, 366 B.R. 870, 877 (Bankr. N.D. Ind. 2007)).

Furthermore, in its own review of relevant Third Circuit case law, this Court identifies at least one other analytical approach where courts examine the totality of  circumstances, which is

the approach this Court will follow, rather than simply focusing on the impact of distribution, on the one hand, or the creditor's sophistication on the other. *See Agassi v. Planet Hollywood Int'l, Inc.*, 269 B.R. 543 (D. Del. 2001); *In re SemCrude, L.P.*, 443 B.R. 472 (Bankr. D. Del. 2011). In *Planet Hollywood*, certain professional athletes and their service companies sought determination as to their rights to attorney fees and related expenses under the attorney fee provision in rejected personal service contracts. 269 B.R. at 545-48. Some of the claimants failed to include the attorney fee provision in their individual proofs of claim but attached a copy of the contract to the proofs of claim. *Id*. at 546. In holding it would be equitable to allow certain claimants to proceed based on the informal proof of claim doctrine, the *Planet Hollywood* court focused its fifth prong analysis on the fact that the creditors "communicated their intent to collect attorney's fees from the [d]efendants on numerous occasions prior to the expiration of the bar date." *Id*. at 550-51. Specifically, outside of motions filed with the court, the creditors' counsel also sent letters to the debtors indicating the claimants sought to collect attorney fees in connection with the termination of their individual contracts. *Id*. at 551.

Similarly, in *SemCrude,* downstream purchasers of crude oil brought an adversary proceeding against the debtors-sellers to determine validity and priority of their liens and to permit final payments for prepetition purchases. 443 B.R. at 472. The purchasers sought to amend their complaint to add claims against the debtors for recoupment of damages for the debtors' alleged breach of warranty of title and indemnification. *Id*. at 474-75. The debtors objected asserting, *inter alia*, the purchasers could not amend their complaint since the bar date passed and the additional claims were new claims not previously asserted in the proofs of claim. *Id*. at 477. The *SemCrude* court found that "through the operation of at least three pleadings" previously filed in the case, the claimant satisfied the requirements for the recognition of an informal proof of claim.

*Id*. at 480.   Therefore, the *SemCrude* court permitted the purchasers to assert the additional claim.

*Id*.   In analyzing the fifth prong, the *SemCrude* court found that the claimant's "consistent

assertions of its contract rights throughout the pendency of the [d]ebtors' consolidated bankruptcy

cases justified the [c]ourt's finding that [claimant] has previously asserted claims it now seeks to

assert . . . . " *Id*.

Lastly, courts within the Third Circuit found various pleadings constituted an informal

proof of claim.  *See*, *e.g.*, *In re Brown*, 76 F. App'x 471, 472 (3d Cir. 2003) (a motion for relief

from the automatic stay); *Rosenblum*, 545 B.R. at 859–60 (a motion to dismiss); *Petrucci*, 256

B.R. at 707 (an adversary complaint); *In re Forrester,* No. 91-36637, 1995 WL 499615, at *6

(Bankr. D.N.J. Oct. 3, 1994) (a motion for entry of an order recognizing an unsecured priority

claim in favor of the Internal Revenue Service); *In re Wilbert Winks Farm, Inc.*, 114 B.R. 95, 97

(Bankr. E.D. Pa. 1990) (creditor's filing of an involuntary petition); *In re Penn State Clothing

Corp.,* 205 B.R. 62, 64–65 (Bankr. E.D. Pa. 1997) (fee applications filed by Chapter 11

professionals after the case was converted to Chapter 7).

### B.        Counterclaims Two and Three Constitute an Informal Proof of Claim

Counterclaims Two and Three, which are set out in the Notice of Removal, easily meet the

first, third, and fourth elements of a valid informal proof of claim.  First, Counterclaims Two and

Three are in writing.   With respect to the third prong, the Notice of Removal itself and

Counterclaims Two and Three's "WHEREFORE" clauses demonstrate Bendit intends to hold the

Debtor liable for its claims.  The Notice of Removal states that the Passaic County Litigation "has

a clear and direct impact on property of the estate under 11 U.S.C. § 541.  Resolution of the [Passaic

County Litigation] may significantly affect the administration of the estate . . . and proceedings

affecting the liquidation of assets of the estate and the adjustment of the debtor/creditor

21

relationship." (Passaic AP, Docket No. 1 at 2).  The "WHEREFORE" clauses specifically request

that the Court enter judgment against the Debtor and Ms. Roper for "compensatory damages

together with interest, attorney's fees, and costs as permitted by law." (*Id.* at 21).  Likewise, Bendit

filed the Notice of Removal in this bankruptcy court, which included Counterclaims Two and

Three, satisfying the fourth prong.

With respect to the second prong – whether the document contains a demand by the creditor

on the bankruptcy estate – this Court is not persuaded by the *Bethas* decision.  The *Bethas* decision

mentions, but does not consider, that the Third Circuit stated that an informal proof of claim must

contain the "'amount of the claim (**if ascertainable**).'" *Am. Classic Voyages Co.*, 405 F.3d at 131

(quoting *Charter*, 876 F.2d at 863) (emphasis added).  Notably, the *Charter* court recognized a

motion for relief from stay, which did not articulate a sum certain in damages,[10] constituted an

informal proof of claim since the motion "clearly" stated that the claimants sought to hold the

debtor liable for certain tort injuries.  876 F.2d at 864.  This Court recognizes the day-to-day

realities of bankruptcy wherein creditors, for a variety of reasons, file formal proof(s) of claim on

an amount "unknown" requiring either a later timely amendment or prompting an objection, which

may bring about an amendment or a request to amend.[11]

Based on case law, the facts of this case and giving consideration to general bankruptcy

practice, the Court finds that Counterclaims Two and Three satisfy the second prong.  First,

Counterclaims Two and Three explicitly set out their nature, in that they are tort claims against the

Debtor and Ms. Roper.  Second, by incorporating the facts stated in the Answer, Counterclaims

---

[10] The motion, in relevant part, read as follows: "[t]he movants' claims are of such nature that they are not readily ascertainable in a certain dollar amount and must await trial on the merits after full and complete discovery." *Charter*, 876 F.2d at 864 n.6.

[11] The Court does not encourage the practice of using "unknown" to identify the amount due on a claim, but recognizes in limited circumstances – but not every – that it may be acceptable.

Two and Three are clear as to when the claims arose.  Specifically, "[o]n April 11, 2011, the

[Debtor] discharged Bendit Weinstock from further representation of the plaintiffs in the

Prudential Case who had not accepted the global settlement . . . . [Debtor] prohibited Bendit

Weinstock and William Gold, Esq. from communicating directly with the plaintiffs . . . ."  (Passaic

AP, Docket No. 1 at 18).  Third, as previously mentioned, the Notice of Removal clearly states

that Bendit expected its Counterclaims to have "a clear and direct impact on property of the estate"

and affect "the liquidation of assets of the estate."  (*Id*. at 2).

Having decided Bendit meets prongs one through four, the Court must turn to the more

complex portion of the analysis, which is with the fifth and final prong.  On the one hand, if the

Court approaches the fifth prong the same as the *Han-Hsien Tuan* court then this Court would rule

against Bendit.  First, as a law firm, which oversaw and successfully represented dozens of clients

in a nationwide and complex litigation, Bendit is undeniably a sophisticated party.  Second, Bendit

does not deny it had actual notice of the Bar Date.  To the contrary, Bendit timely filed Claim No.

5 and admitted at oral argument that it made a mistake excluding Counterclaims Two and Three

from Claim No. 5.  Third, Bendit has been one of the most active creditors in this bankruptcy case

since the Petition Date.  As an illustration, Bendit alone: (1) removed two adversary proceedings

against the estate; (2) prosecuted and responded to countless motions in the Main Case; and (3)

wrote approximately a half dozen letters to the Court either expressing its frustrations with the

administration of the estate or the progress of discovery.

On the other hand, if the Court adopts the approach illustrated by *Petrucci*, the scales shift

in favor of accepting Counterclaims Two and Three as an informal proof of claim.  With respect

to whether any creditor detrimentally relied, one obvious result of allowing the informal proof of

claim is the reduction of the pool available for other unsecured creditors.  However, as the court

in *Cavalier Indus.* held, such prejudice is justified absent a demonstration of detrimental reliance by other creditors on receipt of a particular percentage.  2003 WL 716291, at *3.  There has been zero evidence presented to the Court indicating any unsecured creditor (or any creditor) detrimentally relied on receiving a certain percentage of the unsecured pool.

The idiosyncrasies of this particular case compel the Court to pass on a strict adaptation of either of the first two approaches (the impact on creditor body versus sophistication of claimant).  Instead, the Court will follow the line of cases that look to the totality of the circumstances in deciding whether equity dictates recognition of Bendit's informal proof of claim.  In other words, this Court must perform a balancing test to determine how equity should prevail.

Bendit's identity and the actions it took in this case weigh against Bendit's request to recognize an informal proof of claim.  As a law firm, Bendit's level of sophistication goes without saying.  Further, no other creditor rivals Bendit's involvement in this case.  Yet, the Amended Claim Objectors were all on notice of Counterclaims Two and Three from the beginning of the bankruptcy proceeding and before it.  The Counterclaims are not breaking news.  Bendit's Notice of Removal, which includes the Counterclaims, has been on the Passaic AP docket since February 26, 2016 and Bendit's counsel periodically raised the issue of the Passaic AP at hearings and status conferences before this Court.  The Debtor also lists the Passaic AP claims as an asset of the estate on Schedule B and as an active legal action on its Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy.  Above all, the active parties in the case are lawyers represented by other lawyers.  The notion that either the Debtor's Principals or any other creditor read the above quoted Notice of Removal language and/or the "WHEREFORE" clauses and did not expect Counterclaim Two or Three to affect the administration of the estate's assets makes no sense.

24

The denial of Bendit's claim generates an inequitable result and a possible windfall for the remaining unsecured creditors. This shifts the scale in Bendit's favor. If the Court denies Bendit's informal proof of claim, the Court essentially decides that Bendit cannot recover on Counterclaims Two and Three. An order denying the Motion to Amend would have the effect of granting the Trustee a motion to dismiss Bendit's Counterclaims Two and Three without ever hearing an argument on their merits. Under the facts of this case, such a result promotes form over substance. When considering that Bendit timely asserted Counterclaims Two and Three in Passaic County Superior Court and actively pursued them before this Court, denying Bendit the ability to pursue Counterclaims Two and Three at this juncture would be simply unjust and inequitable.

The fact that Bendit timely filed Claim No. 5 and accounted for Counterclaim One, but failed to account for Counterclaims Two and Three, weighs against it. Bendit asserts that the "failure to include [the Counterclaims] as part of the initial Proof of claim was inadvertent . . . ." (Main Case, Docket No. 298-1 at 14). Similarly, at oral argument, Bendit said it made a mistake. Bendit fails to cite to any authority where a court granted a motion similar to Bendit's, in a Chapter 7 case, after a finding of mere "inadvertence."

On the other hand, it is important to note that Claim No. 5 can exist independently from an informal proof of claim. Bendit could simply hold two claims. Nothing in either the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure prevents a creditor from filing two proofs of claim in a single bankruptcy case asserting different theories of recovery. Occasionally, creditors file duplicative claims subjecting one of those claims to either expungement or voluntary withdrawal. Similarly, creditors sometimes file multiple proofs of claim to compartmentalize their secured and unsecured claims.

On balance, while some factors work against Bendit, the Court finds that the equities favor Bendit in this case.  The Court holds that Counterclaims Two and Three, which were timely filed before the Bar Date by the Notice of Removal and the Counterclaims, themselves, serve as a timely informal proof of claim.[12]  The informal proof of claim only incorporates Counterclaims Two and Three and exists independently from Claim No. 5 because formalization of a valid informal proof of claim is a prerequisite for a creditor's participation in distribution.  *Petrucci*, 256 B.R. at 707 (citing Fed. R. Bankr. P. 3001).  Bendit must, therefore, file a formal proof of claim memorializing Counterclaims Two and Three.  Since the Court's decision divides Bendit's claim into two separate proofs of claim, the Court does not find it necessary to address the parties' arguments as to whether: (1) the informal proof of claim was superseded by Claim No. 5; and (2) Bendit may pursue Counterclaims Two and Three for the sole purpose of a set-off.

## II.    *Amending Proof of Claim No. 5 – Federal Rule of Bankruptcy Procedure 7015*

Counterclaims Two and Three must be incorporated and filed in a separate proof of claim. The only remaining portion of the proposed amendment concerns Part I and Part II.  As mentioned, Claim No. 5 was bifurcated by the September Order.   As it stands, Claim No. 5 consists of: (1) a claim up to $2,011,562.82, secured by the funds on deposit with this Court representing the balance of the QSF, and (2) a $1,988,437.15 general unsecured claim for estimated damages associated with Counterclaim One.  The remaining proposed amendment seeks to codify the September Order and increase the general unsecured claim portion from $1,988,437.15 to $2,400,000.  No party objected to Part I of the amendment.  The Court will, therefore, focus its analysis on Part II only.

---

[12] In no way, shape, or form does the Court's holding validate the merits of Counterclaims Two and Three.  Like any other proof of claim, Bendit's Counterclaims are subject to a motion to expunge.  If the Counterclaims are proven meritless, they will be disallowed.  The Court's holding is limited and should only be read to decide whether Bendit possesses an informal proof of claim and may amend Claim No. 5.

Federal Rule of Bankruptcy Procedure 7015 expressly adopts Federal Rule of Civil Procedure 15, which sets out the standards for allowing amendments to pleadings in adversary proceedings. *In re G-I Holdings, Inc.,* 514 B.R. 720, 754 (Bankr. D.N.J. 2014), *aff'd sub nom*, *In re G–I Holdings Inc.*, No. 15-2164, 2016 WL 3878160 (3d Cir. July 18, 2016). "Those standards also apply to amendments to a proof of claim." *In re Brown*, 159 B.R. 710, 714 (Bankr. D.N.J. 1993). "[A]n amendment of a timely filed claim will relate back to the date the claim was originally filed if the amendment 'arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original' claim." *Id*. (quoting Fed. R. Civ. P. 15(c)(2)).

A party seeking to amend its proof of claim after the bar date must obtain the court's permission to do so. *Brown,* 159 B.R at 714. Likewise, the decision to allow amendments after the bar date is within the discretion of the bankruptcy court. *G-I Holdings, Inc.,* 514 B.R. at 754 (citing *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 309 (3d Cir. 1999)). Permission to amend proofs of claim "shall be freely given when justice so requires." *Brown*, 159 B.R. at 714. However, "[a]mendments after the bar date … must be scrutinized carefully to ensure that they are truly amending the timely filed claim and not asserting a new claim." *Id.*

There are two rationales for allowing amendments to proofs of claim: (1) bankruptcy courts are courts of equity; and (2) an amendment of a claim is similar to an amendment of a pleading. *G-I Holdings, Inc.*, 514 B.R. at 754 (citing *In re Orion Ref. Corp.*, 317 B.R. 660, 664 (Bankr. D. Del. 2004)). In determining whether to allow an amendment to a proof of claim, courts seek guidance from Federal Rule of Civil Procedure 15(c) to determine whether "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . ."Fed. R. Civ. P. 15(c). Amendments should be allowed when the original claim provides notice of the "existence, nature and amount of the

27

claim." *Orion*, 317 B.R. at 664.  Hence, amendments should be used to "cure obvious defects, describe the claim with greater specificity or plead a new theory of recovery on facts of the original proof of claim."  *Id*.  Likewise, "[c]aselaw has generally held that a post-bar date proof of claim seeking to merely increase the amount of a timely-filed claim is not the assertion of a new claim, but an allowable amendment to a prior claim."  *In re Metro Transp. Co*., 117 B.R. 143, 148 (Bankr. E.D. Pa. 1990) (citing *In re Candy Braz, Inc.*, 98 B.R. 375, 381 (Bankr. N.D. Ill. 1988)); *In re Hanscom Retail Foods, Inc.*, 96 B.R. 33, 35 (Bankr. E.D. Pa. 1988); *In re Bruno*, No. 06-21423, 2008 WL 834420, at *3 (Bankr. D.N.J. Mar. 27, 2008) (granting a landlord's motion to amend its proof of claim to modify cure amounts due under a lease).

If the amendments do not relate back to the initial filing, it will be deemed a new claim and will not be permitted.  *G-I Holdings, Inc.,* 514 B.R. at 754 (citing *In re MK Lombard Grp. I, Ltd.*, 301 B.R. 812, 816 (Bankr. E.D. Pa. 2003)).  "Where the proposed amendment is more than just a correction of an error or involves something beyond the original claim, courts will generally apply an equitable test to determine whether to allow the amendment anyway."  *Brown*, 159 B.R. at 715.  The equitable test focuses on the issues of prejudice, delay, and bad faith.  *Id*. at 716.

Here, the Motion to Amend seeks to increase the amount of Claim No. 5.  The Amended Claim Objectors argue that Bendit should not be allowed to amend Claim No. 5 to increase the unsecured claim from $1,988,437.15 to $2,400,000 because, in their view, Counterclaim One is futile and meritless.  The Amended Claim Objectors fail to recognize that the merits of Claim No. 5 are not the subject of the Motion to Amend.  If the Amended Claim Objectors wish to object to the merits of Claim No. 5, other recourse is available.  This is not one.  The Amended Claim Objectors already conceded that Counterclaim One was part of Claim No. 5 as originally filed.  Since Bendit's amendment does not assert a new claim, it is well within this Court's discretion

28

under Bankruptcy Rule 7015 to allow Bendit to amend Claim No. 5.  The Court chooses to exercise its discretion to permit the amendment because the Amended Claim Objectors failed to demonstrate why this Court should decide otherwise.

## **CONCLUSION**

For the aforementioned reasons, this Court grants Bendit's Motion to Amend.  The Court finds Bendit possesses an informal proof of claim and directs Bendit to file a formal proof of claim memorializing the informal proof of claim (Counterclaims Two and Three).  The Court further finds that Bendit is authorized to amend Claim No. 5 to increase the general unsecured claim from $1,988,437.15 to $2,400,000.  Nothing set forth herein shall bar Bendit from reducing any portion of its claim.  Bendit may file one proof of claim that includes the memorialization of Counterclaims Two and Three and the amendment to Claim No. 5.  An appropriate Order will enter.

Dated: July 5, 2017

_Stacey L. Meisel_
Honorable Stacey L. Meisel
United States Bankruptcy Judge